Arthur L. Spirn, Esq. (6214)
KORN & SPIRN, ESQS.
50 Clinton Street, Suite 503
Hempstead, New York 11550
(516) 538-5222



UNITED STATES DISTRICT COURT ECF CASE - NRB
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------x

DUNEL CADELY AND JAMES HINES,                    Civil Action No. 04-CV-8196

                                  Plaintiffs       JURY TRIAL DEMANDED

                   -against-                          AMENDED
                                                     COMPLAINT

NEW YORK CITY DEPARTMENT OF TRANSPORTATION
ANN WILLIAMS, ANTHONY NAPOLITANO, MICHAEL
CUMMISKEY, LOCAL 376 OF DISTRICT COUNCIL 37 OF
THE AMERICAN FEDERATION OF STATE, COUNTY AND
MUNICIPAL EMPLOYEES, GENE DEMARTINO AND
THOMAS KATOU,
Defendants
-------------------------------------------------------------------------------x

        Plaintiffs, by Korn & Spirn, their attorneys, complaining of the defendants herein, allege as

follows:

### 1.  Introduction:

#### (a)    As to plaintiff, Dunel Cadely

        This is a proceeding to recover damages, to address the deprivation of plaintiff's civil rights

arising out of the conduct of the defendants and each of them in creating a hostile work environment

based on racial discrimination, racial harassment and racial profiling; failure, refusal and neglect on

the part of the plaintiff's employer to take effective steps to eliminate such racial harassment and

racial discrimination in the work place; retaliation by the defendants and each of them for the filing

by the plaintiff of a complaint with the EEOC and a simultaneous filing with the New York City

Commission on Human Rights; for termination of plaintiff's employment based upon the plaintiff's race; for termination of plaintiff's employment in retaliation for the plaintiff's filing of the aforementioned complaints; denying plaintiff equal terms and conditions of employment because of his race, color and national origin and in retaliation for his filing complaints with the EEOC and the New York City Commission on Human Rights; failure, refusal and neglect of Local 376, a local union of which plaintiff is a member, to intercede on the plaintiff's behalf, to file grievances where appropriate and failure, refusal and neglect to take effective steps to represent the plaintiff and act on his behalf with regard to the discriminatory conduct of his employer and those supervisory employees named herein as defendants; failure, refusal and neglect of said union to treat the plaintiff in the same manner as other union members who are not of African-American heritage; after termination of his employment, failure, refusal and neglect of the union to adequately intercede and effectively represent the plaintiff in connection with reinstatement because of his race and national origin; failure, refusal and neglect to treat the plaintiff in the same manner as the union treats other union members who are not of African-American heritage.

As a result of the discriminatory conduct of the defendants and each of them as herein above set forth and as more fully described hereinafter, the plaintiff was caused to sustain severe and serious emotional pain and suffering, suffered the loss of his job, the elimination of his income and, based upon the conduct of these defendants, which is unconscionable and shocks the conscience, plaintiff seeks, in addition to front pay, back pay, compensatory and liquidated damages, costs and disbursements, attorneys fees and punitive damages, all as provided by law.

defendants; failure, refusal and neglect of said union to treat the plaintiff in the same manner as other union members who are not of African- American heritage; after termination of his employment, failure, refusal and neglect of the union to adequately intercede and effectively represent the plaintiff in connection with reinstatement due to his race and national origin; failing, refusing and neglecting to treat the plaintiff in the same manner as the union treats other union members who are not of African American heritage.

As a result of the discriminatory conduct of the defendants and each of them as herein above set forth and as more fully described hereinafter, this plaintiff was caused to sustain severe and serious emotional pain and suffering, suffered the loss of his job, the elimination of his income and, based upon the conduct of these defendants, which is unconscionable and shocks the conscience, plaintiff seeks, in addition to front pay, back pay, compensatory and liquidated damages, costs and disbursements, attorneys fees and punitive damages, all as provided by law.

Plaintiff alleges that the defendants' conduct violates 42 USC 1983, et seq.; 42 USC 2000(e) et seq.; the Americans with Disabilities Act; denies plaintiff the equal rights and entitlements as afforded citizens of the United States under the 14th Amendment to the Constitution of the United States; NYC 8-107.1(c) of the Administrative Code of the City of New York; 296 et seq. of the New York State Executive Law and such other statutes, rules and laws as may be applicable to the plaintiff's claims hereunder.

## 2.   Jurisdiction:

The jurisdiction of this court is invoked pursuant to 28 USC §1331; 28 USC §1343 (3) and §1343 (4), conferring original jurisdiction upon this court of any civil action to recover damages or

to secure equitable relief under the Constitution and any act of Congress providing for the protection of civil rights; 42 USC §1983; 42 USC §2000(e), et seq (Title VII); NYC Administrative Code §8-107.1(e); NYS Executive Law §296 et seq. (Human Rights Law). The court's pendent jurisdiction of claims under New York State law is also invoked.

### 3.   Venue:

The unlawful employment practices heretofore and hereinafter alleged were committed within the City and State of New York, County of New York, wherein the defendant's principal place of business is maintained. Accordingly, venue lies in the United States District Court for the Southern District of New York, under 28 USC §1391(b).

### 4.   Prior Administrative Proceedings:

#### (a)   As to plaintiff, Dunel Cadely

Plaintiff, Dunel Cadely, filed a complaint with the New York City Commission on Human Rights, subscribed and sworn to the 11th day of July 2002, against the New York City Department of Transportation, Michael Cummiskey, Anthony Napolitano, and Ann Williams, charging the defendants with disparate treatment, racial discrimination and failure to take appropriate remedial action to effectively stop the conduct complained of. Subsequently, plaintiff filed a second complaint against the same defendants, charging that the defendant, DOT, terminated the plaintiff's employment for racial reasons and as a result, plaintiff charges that the defendants have discriminated against him by denying him equal terms and conditions of employment because of his race, color and national origin. Thereafter, plaintiff filed a complaint with the New York City Commission on Human Rights against defendants, Local 376 of District Council 37 of the American

Federation of State, County and Municipal Employees, Gene DeMartino and Thomas Katou in or about January 2004 . Upon information and belief, a simultaneous filing of each said Complaint was made with the EEOC.

Plaintiff has requested and received from the New York City Commission on Human Rights a dismissal of the said Complaints for administrative convenience, and has received Right to Sue Letters from the EEOC. This action has been commenced within 90 days of the date of plaintiff's receipt of the Right to Sue Letters from the EEOC.

### (b) As to Plaintiff, James Hines

Plaintiff, James Hines, filed a Complaint with the New York City Commission on Human Rights, subscribed and sworn to the 18th day of December 2000 against the New York City Department of Transportation and Erwin Cohen, charging, inter alia, that the defendants had discriminated against him by denying him a reasonable accommodation of his disability. A simultaneous filing of the Complaint was made with the EEOC. Thereafter, and by Amended Verified Complaint, subscribed and sworn to the 21st day of October 2003, plaintiff, James Hines, amended his earlier Compliant by adding Anthony Napolitano as a named defendant, alleging failure to accommodate the plaintiff's disability and denying him equal terms and conditions of employment because of his disability and because of his opposition to the discriminatory practices of the defendants, and further alleging facts giving rise to a claim of retaliation for filing his original Complaint on December 18, 2000. Finally, and on January 6, 2004, plaintiff, James Hines, filed another Complaint with the New York City Commission on Human Rights against the City of New York Department of Transportation, Anthony Napolitano and Daniel Mando, alleging a hostile work

environment, racial discrimination, termination of his employment in retaliation for his having filed Complaints with the New York City Commission on Human Rights and demotion from position of Highway Repairer to that of Assistant Highway Repairer. Each Complaint filed with the New York City Commission on Human Rights was simultaneously filed with the EEOC.

In or about January 2004, plaintiff, James Hines, filed a complaint with the New York Commission on Human Rights against Local 376 of District Council 37 of the American Federation of State, County and Municipal Employees, Thomas Katou and Gene DeMartino, charging that the union and its officer failed and refused to take any action on his behalf to obtain a reasonable accommodation of his disability and failing and refusing to take any effective action with respect to the termination of his employment, all because of the plaintiff's race and in retaliation for the plaintiff having filed complaints with the New York City Commission on Human Rights and the EEOC.

Plaintiff has requested and received from the New York City Commission on Human Rights a dismissal of the said Complaints for administrative convenience, and has received Right to Sue Letters from the EEOC. This action has been commenced within 90 days of the date of plaintiff's receipt of the Right to Sue Letters from the EEOC.

### 5.  Parties

### (a) Dunel Cadely

Plaintiff, Dunel Cadely, is of African American heritage, is an American citizen of Haitian origin, and at all times herein mentioned Plaintiff resided in the City and State of New York. Dunel Cadely was originally hired by the New York City Department of Transportation on May 23, 1993

as a seasonal Assistant Highway Repairer and was promoted periodically to and including April 2001, when Plaintiff became a Highway Repairer. At that same time, Plaintiff Dunel Cadely became a member of Local 376 of District Counsel 37 of the American Federation of State, County and Municipal Employees.

### (b) James Hines

Plaintiff, James Hines, is an American citizen of African American heritage and at all times herein mentioned resided in the City and State of New York. James Hines was first hired by the New York City Department of Transportation as a permanent Assistant Highway Repairer in or about May 1993 and was promoted periodically to and including April 2001 when he became a Highway Repairer. At that same time, Mr. Hines joined Local 376 of District Counsel37 of the American Federation of State, County and Municipal Employees.

### (c) New York City Department of Transportation

Upon information and belief, Defendant New York City Department of Transportation (hereinafter "DOT") is an employer as defined by the Administrative Code of the City of New York and employs 15 or more employees. This Defendant maintains its principle place of business at 40 Worth Street, New York, New York 10013.

### (d) Michael Cummiskey

Defendant, Michael Cummiskey, at all times herein mentioned, was and is employed by Defendant DOT as a District Supervisor.

### (e) Anthony Napolitano

Defendant, Anthony Napolitano, at all times herein mentioned, was and is employed by Defendant DOT as a Yard Chief.

-8-

### (f) **Ann Williams**

Upon information and belief, Defendant Ann Williams, is employed by Defendant DOT as an EEO Director.

### (g) **Local 376 of District Council 37 of the American Federation of State, County and Municipal Employees**

Upon information and belief, Local 376 of District Counsel 37 of the American Federation of State, County and Municipal Employees (hereinafter "Local 376") is a labor union organized and existing as such and both plaintiffs herein were members in good standing of said union since in or about April 2001.

### (h) **Gene DeMartino**

Upon information and belief, defendant Gene DeMartino, was and is employed by Local 376 as President of said Union.

### (i) **Thomas Katou**

Upon information and belief, defendant, Thomas Katou was and is employed by Local 376 as Vice President of the Union.

### (j) **Daniel Mando**

Upon information and belief, defendant, Daniel Mando, was and is employed by the defendant, New York City Department of Transportation as the Executive Director of the Department of Bridges.

### 6. **Facts Common to all Causes of Action by Dunel Cadely**

(a)     Since in or about April 2001, the defendants herein have embarked upon a course of conduct which has caused plaintiff, Dunel Cadely, on a daily basis, to suffer the effects of

a hostile work environment. The early motivation for the defendants' conduct was racial discrimination and defendants, Anthony Napolitano, Michael Cummiskey, Ann Williams and the New York City Department of Transportation were unable to hide the racial animus which motivated their daily contact with plaintiff, Dunel Cadely.

(b)     As early as April 2001, Anthony Napolitano, while in the company of plaintiff, Dunel Cadely, and other personnel of the New York City Department of Transportation who were Caucasian, turned to the plaintiff herein and called him a "stupid Haitian" and told Mr. Cadely that when "Americans were talking, Haitians were to shut up."

(c)     On several occasions, Mr. Napolitano told the plaintiff, Dunel Cadely, to "go back to Haiti."

(d)     In a tirade against the plaintiff herein, in or about and between April 2001 and September 2001, defendant, Anthony Napolitano, told the plaintiff that the plaintiff should be glad that he had a job because "this job used to be all Italians," Mr. Napolitano then told the plaintiff: "You fucking Haitians stay away from my face."

(e)     Defendant, Anthony Napolitano, made it clear to the plaintiff, in word and deeds, that he did not like African-Americans being employed by the DOT and taking jobs away from Italian- Americans.

(f)     On or about September 17, 2001, plaintiff herein discovered that all four tires on his motor vehicle had been sabotaged, resulting in four flat tires. Plaintiff's vehicle was near the yard of the Department of Transportation and, upon information and belief, defendant, Anthony Napolitano, either personally or through his direction and control, caused this incident to happen.

-10-

Periodically during the course of his employment as a Highway Repairer, Anthony Napolitano told the plaintiff in no uncertain terms that he would "get your black ass" and "have your job."

(g)     On several occasions, the plaintiff herein complained to Ann Williams, employed by the defendant, DOT, as an EEO Director, of the racial abuse, racial harassment and discrimination that was prevalent during the course of the plaintiff's workday, but the defendant, Ann Williams, failed, refused and neglected to take any effective action to stop the discrimination and harassment.

(h)     In or about April 2002, plaintiff found posted on his locker and in the yard where he worked pictures of terrorists bearing weapons with the name "Dunel Cadely" written above one of the terrorists. This was clearly an attempt to humiliate and demoralize the plaintiff and to cause him shame and embarrassment.

(i)     On or about April 9, 2002, more pictures were posted on the plaintiff's locker and in the yard where he worked of terrorists with Dunel Cadely's name affixed. Again, this was part of a pattern of conduct designed to humiliate, demoralize and terrorize the plaintiff in the course of his employment with the defendant, DOT.

(j)     In or about and between April 2002 and December 2002, the plaintiff was required to take time off from work to take his ill child to the doctor. Other employees who were not African-American and who were of Italian and Caucasian heritage routinely took time off for reasons similar to the reason that the plaintiff herein took this time off. Defendant, Napolitano, however, became irate at the plaintiff, yelled and spit in his face, and stated in loud terms "We're going to get your black ass."

-11-

(k)     In or about April 2002, another poster appeared in the yard and at the plaintiff's locker, this time a picture of Abner Louima, a Haitian man who was shot by the police and whose case received national attention. Dunel Cadely's name was written above Abner Louima's head, which plaintiff Cadely took to mean that he was in physical danger and might be treated the same way as Abner Louima had been treated.

(l)     In or about November 2002, a picture appeared in the local paper of Haitian Nationals who were trying to reach the United States in a boat which had run aground. A supervisor with the Department of Transportation brought the picture to the plaintiff herein and said to the plaintiff "See your people - why don't you go back Haiti. All of you should go in the same boat. If you don't keep your mouth shut, the same will happen to you. Go back to Haiti."

(m)     In or about December 2002, the Department of Transportation authorized the transfer of Traffic Device Maintainers to the position of Highway Repairers. Upon information and belief, all of the Traffic Device Maintainers were white. Further, upon information and belief, there was no authority to transfer Traffic Device Maintainers to the position of Highway Repairers. Upon information and belief, this was a prelude to the later termination of the plaintiff's employment.

(n)     In or about January 2003, Anthony Napolitano, in the presence of the plaintiff herein, yelled at an African-American female worker and called her a "stupid black lady" and told her to "get your stupid black ass to McDonald's instead of using our toilet." It seems that the African-American female worker committed the sin of using a bathroom facility used by white DOT employees.

(o)     In or about April 2003, defendant, Anthony Napolitano, approached the plaintiff and in a very self-satisfied way told the plaintiff that "Soon your black ass won't be here." It is presumed that Anthony Napolitano knew well in advance that the plaintiff's employment was to be terminated.

(p)     During the course of his employment as a Highway Repairer and during the time frames above, defendant, Anthony Napolitano, in furtherance of his plan and intent to have the plaintiff terminated and/or to cause the plaintiff difficulty and humiliation, refused to allow the plaintiff's direct supervisor to evaluate plaintiff's work performance, but rather directed one, Lopez, to do the evaluation for plaintiff Cadely. Plaintiff Cadely did not work with Lopez and , therefore, Lopez could not possibly render a fair, knowledgeable and impartial evaluation. As a result, the plaintiff received a negative evaluation. Under all of the rules of the Department of Transportation, the evaluation should have been done by the plaintiff's immediate supervisor.

(q)     On or about the 11th day of July 2002, the plaintiff herein filed a Complaint with the New York City Commission on Human Rights against the New York City Department of Transportation, Michael Cummiskey, Anthony Napolitano and Ann Williams.

(r)     In addition to the motivation of racial hostility, racial animus and racial discrimination, the defendants above named acted in retaliation to the plaintiff's filing of said Complaint and continued and exacerbated their harassment of the plaintiff and created an intolerable and hostile work environment in which the plaintiff was forced to work.

(s)     Thereafter, the plaintiff filed an additional Complaint against the same defendants with the New York City Commission of Human Rights.

(t)    Subsequent thereto, plaintiff filed a third Complaint with the New York City Commission on Human Rights against defendants, Local 376 of District Council 37 of the American Federation of State, County and Municipal Employees, as well as against Gene DeMartino and Thomas Katou. Said filing was in or about January 2004.

(u)    On or about May 17, 2003, plaintiff's employment with the defendant DOT was terminated. Upon information and belief, the plaintiff herein and co-plaintiff, James Hines, both of African-American heritage, and both of whom had filed Complaints with the New York City Commission on Human Rights, with a simultaneous filing with the EEOC, were terminated by the Department of Transportation. Upon information and belief, these plaintiffs were the only Highway Repairers terminated by the Department of Transportation.

(v)    The termination of the plaintiff's employment was based in whole or in part because the plaintiff herein is of Haitian origin, is an African-American and because the plaintiff filed Complaints against the defendants with the New York City Commission on Human Rights and the EEOC.

(w)    Upon information and belief, there is nothing in the plaintiff's records, other than the extreme animus of the defendants herein, which would justify the termination of the plaintiff's employment as aforesaid.

(x)    Upon information and belief, the plaintiff herein was duly qualified for the position which he held with the Department of Transportation, performed his work assignments properly, diligently and was periodically commended for his work performance by DOT supervisors who did not harbor a racial animus, a discriminatory animus and a retaliatory animus towards the

-14-

plaintiff.

(y)     At the time of the termination of the plaintiff's employment as aforesaid, there were a total of eight Traffic Device Maintainers who had been improperly promoted to the position of Highway Repairer. All but one of those Traffic Device Maintainers were white. At the time of his termination, plaintiff had been employed by the Department of Transportation for a period of ten years, and had been a Highway Repairer for more than two years. None of the white personnel who had been Traffic Device Maintainers and who had been promoted to Highway Repairers were terminated or laid off.

(z)     After each of the incidents described above, the plaintiff complained to the EEO Office at the DOT, directly to the defendant, Ann Williams, and, on occasion, to Commissioner Iris Weinshall. No effective steps were taken to stop or curtail the discriminatory conduct perpetrated by these defendants against the plaintiff; no effective steps were taken to discipline the employees involved; and no effective steps were taken to eliminate the hostile work environment in which the plaintiff labored each and every day.

(aa)    Shortly after his termination on May 17, 2003 and on or about May 24, 2003, a series of phone calls were made to the plaintiff's home threatening and harassing the plaintiff's family, including his children. As a result, plaintiff's children were terrified and a complaint was made to the police and a police report filed.

(bb)    Shortly after the plaintiff's termination on June 24, 2003, he was advised by one, Helene Holloway, of the DOT that plaintiff could return to work in his original title as a Highway Repairer. When the plaintiff appeared at the DOT for the purpose of regaining his position

as Highway Repairer, he was advised that there was a change and that the plaintiff could return to work only as an Assistant Highway Repairer, a position that he had held prior to being advanced to the position of Highway Repairer. The plaintiff refused to accept this demotion.

(cc) In or about May 17, 2004, the plaintiff was again advised that he could return to work as a Highway Repairer and was directed to report to 40 Worth Street, New York, New York for reinstatement. The plaintiff reported as directed, and was scheduled to return to work at the Flatlands Yard, but while at 40 Worth Street, New York, NY, the plaintiff was required to sign a timecard which had been prepared with a false social security number and a false title. The plaintiff refused to sign the card and was directed to leave.

(dd) The following day the plaintiff returned to the offices of the DOT to request a proper timecard which he would sign, but again the plaintiff was presented with a card which falsely stated on its face that the plaintiff had been AWOL and the plaintiff refused to sign that card. The plaintiff was then told that the card was prepared at the direction of Linda Washington of the DOT Personnel Office and that the plaintiff had to sign the card or he would not be reinstated. The defendants herein knew, or should have known, that by signing a timecard which indicated that the plaintiff had been AWOL, it would substantially affect the cases which the plaintiff had filed with the New York City Commission on Human Rights.

(ee) The series of events orchestrated by the Department of Transportation subsequent to the plaintiff's termination and ostensibly intended to allow the plaintiff to return to work, instead caused the plaintiff great embarrassment and humiliation and was in direct retribution for the plaintiff filing complaints with the New York City Commission on Human Rights and the

EEOC.

      **(ff)**     Upon information and belief, it was never the intention of the DOT to reinstate the plaintiff to the position of Highway Repairer.

      **(gg)**     Throughout all of the time periods referenced above and after most, if not all, of the incidents referenced above, the plaintiff duly complained and reported to defendant, Local 376. Complaints were made directly to Gene DeMartino and Thomas Katou, as President and Vice President of defendant Local 376.

      **(hh)**     In response to most of the complaints submitted to it by the plaintiff herein, defendant Local 376 advised the plaintiff that there was nothing they could do and the plaintiff should learn to keep his mouth shut. Upon information and belief, if a white and/or Italian-American union member complained of conduct and or treatment on the job, the union had a history of assisting said union member and never responded in the manner in which it did in the plaintiff's case. In response to the termination of the plaintiff's employment, the defendant Local 376 wrote a single letter of complaint to the DOT. No other action was taken by the union to protect the plaintiff's employment.

      **(ii)**     The plaintiff knew that plaintiff Dunel Cadely and co-plaintiff James Hines, both African-Americans, were the only Highway Repairers terminated by the Department of Transportation. Such conduct was so outrageous and should have engendered in the union a response and sincere efforts to protect the plaintiff and retain his employment. Instead, defendant Local 376 did nothing more than write a single letter. Upon information and belief, if it had been a white or Italian American employee who had been terminated as had the plaintiff, the union would have

-17-

pursued a more vigorous and possible effective campaign to save the employee's job.

       **(jj)**    Upon information and belief, Local 376 has a history of effectively assisting white and Italian-American employees, but of failing to adequately and effectively assist those of its members who are African-American.

       **(kk)**    On one of the occasions when defendant Napolitano told the plaintiff that he would "get his black ass," the plaintiff enlisted the aid of his union and told defendant Katou about the incident. Katou's response was that the plaintiff should "shut his black mouth too."

       **(ll)**    At the time that two Traffic Device Maintainers were transferred to the position of Highway Repairers, the plaintiff herein again sought the assistance of the union. Plaintiff was told by the union that there was nothing they could do and that the DOT could arrange for that transfer. Upon information and belief, the union failed to intercede on the plaintiff's behalf because the plaintiff is of African-American heritage.

       **(mm)**    The foregoing instances of discriminatory conduct and practices by the defendants are but a few of the events, occurrences and instances of discriminatory practices and conduct of the defendants against this plaintiff.

### AS AND FOR A FIRST CAUSE OF ACTION BY PLAINTIFF DUNEL CADELY AGAINST DEFENDANTS NEW YORK CITY DEPARTMENT OF TRANSPORTATION, ANN WILLIAMS, ANTHONY NAPOLITANO AND MICHAEL CUMMISKEY

    7.    Plaintiff, Dunel Cadely, repeats reiterates and realleges each and every allegation set forth in Paragraphs 1 through 6 above with the same force and effect as if same were set forth at length herein.

8.     The defendants have discriminated against the plaintiff in the terms and conditions of his employment on the basis of his national origin.

9.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of defendants' discriminatory practices unless and until this court grants appropriate relief.

### AS AND FOR A SECOND CAUSE OF ACTION BY PLAINTIFF DUNEL CADELY AGAINST DEFENDANTS NEW YORK CITY DEPARTMENT OF TRANSPORTATION, ANN WILLIAMS, ANTHONY NAPOLITANO AND MICHAEL CUMMISKEY

10.     Plaintiff, Dunel Cadely, repeats, reiterates and realleges each and every allegation set forth in Paragraphs 1 through 9 above with the same force and effect as if same were set forth at length herein

11.     Defendants have discriminated against the plaintiff in the terms and conditions of his employment on the basis of his race in violation of Title VII.

12.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of defendants' discriminatory practices unless and until this court grants appropriate relief.

### AS AND FOR A THIRD CAUSE OF ACTION BY PLAINTIFF DUNEL CADELY AGAINST DEFENDANTS NEW YORK CITY DEPARTMENT OF TRANSPORTATION, ANN WILLIAMS, ANTHONY NAPOLITANO AND MICHAEL CUMMISKEY

13.     Plaintiff, Dunel Cadely, repeats, reiterates and realleges each and every allegation set forth in Paragraphs 1 through 12 above with the same force and effect as if same were set forth at length herein.

14.     Defendants have discriminated against the plaintiff in the terms and conditions of this employment in retaliation for the plaintiff filing a complaint or complaints with the New York City Commission on Human Rights and the EEOC, in violation of Title VII.

15.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of defendants' discriminatory practices unless and until this court grants appropriate relief.

### AS AND FOR A FOURTH CAUSE OF ACTION BY PLAINTIFF DUNEL CADELY AGAINST DEFENDANTS NEW YORK CITY DEPARTMENT OF TRANSPORTATION, ANN WILLIAMS, ANTHONY NAPOLITANO AND MICHAEL CUMMISKEY

16.     Plaintiff, Dunel Cadely, repeats, reiterates and realleges each and every allegation set forth in Paragraphs 1 through 15 above with the same force and effect as if same were set forth at length herein.

17.     The above acts and practices of the defendants and each of them constitute unlawful and discriminatory employment practices within the meaning of the New York State Human Rights Law and the Administrative Code of the City of New York.

18.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of defendants' discriminatory practices unless and until this court grants appropriate relief.

### AS AND FOR A FIFTH CAUSE OF ACTION BY PLAINTIFF DUNEL CADELY AGAINST DEFENDANTS NEW YORK CITY DEPARTMENT OF TRANSPORTATION, ANN WILLIAMS, ANTHONY NAPOLITANO AND MICHAEL CUMMISKEY

19.     Plaintiff, Dunel Cadely, repeats, reiterates and realleges each and every allegation set

forth in Paragraphs 1 through 18 above with the same force and effect as if same were set forth at length herein.

20.    The above acts and practices of the defendants and each of them denies to the plaintiff the equal rights and entitlements as afforded citizens of the United States under the 14th Amendment to the Constitution of the United States.

21.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of defendants' discriminatory practices unless and until this court grants appropriate relief.

### AS AND FOR A SIXTH CAUSE OF ACTION BY PLAINTIFF DUNEL CADELY AGAINST DEFENDANTS NEW YORK CITY DEPARTMENT OF TRANSPORTATION, ANN WILLIAMS, ANTHONY NAPOLITANO AND MICHAEL CUMMISKEY

22.    Plaintiff, Dunel Cadely, repeats, reiterates and realleges each and every allegation set forth in Paragraphs 1 through 21 above with the same force and effect as if same were set forth at length herein.

23.    The above acts and practices of the defendants and each of them violates 42 USC 1983 et seq.

24.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of defendants' discriminatory practices unless and until this court grants appropriate relief.

### AS AND FOR A SEVENTH CAUSE OF ACTION BY PLAINTIFF DUNEL CADELY AGAINST DEFENDANTS NEW YORK CITY DEPARTMENT OF TRANSPORTATION, ANN WILLIAMS, ANTHONY NAPOLITANO, MICHAEL CUMMISKEY, LOCAL 376 OF DISTRICT COUNCIL 37 OF THE AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, TOMMY KATOU AND GENE DEMARTINO

25. Plaintiff, Dunel Cadely, repeats, reiterates and realleges each and every allegation set forth in Paragraphs 1 through 24 above with the same force and effect as if same were set forth at length herein.

26. The racial harassment and national original slurs and associated work related harassment, as well as the retaliatory conduct of the defendants, have caused the plaintiff extreme emotional distress, which fact was known to the defendants and each of them, including the plaintiff's immediate supervisors and executive personnel of the Department of Transportation, and notwithstanding the defendants not only failed to stop the harassment, but were in large measure responsible for it. Furthermore, plaintiff claims that company officials with authority over the plaintiff's supervisors failed to adequately supervise those supervisors and end the harassment.

27. Plaintiff alleges that this harassment and retaliation is actionable as negligent infliction of emotional distress and/or negligent supervision under the Laws of the State of New York.

### AS AND FOR AN EIGHTH CAUSE OF ACTION BY PLAINTIFF DUNEL CADELY AGAINST DEFENDANTS, LOCAL 376 OF DISTRICT COUNCIL 37 OF THE AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, THOMAS KATOU AND GENE DEMARTINO

28. Plaintiff, James Hines, repeats, reiterates and realleges each and every allegation set

forth in Paragraphs 1 through 40 above with the same force and effect as if same were set forth at length herein.

29.     These defendants have discriminated against the plaintiff by denying him equal representation because of his race and by failing to provide plaintiff with the same representation as these defendants afford other members of their union who are not of African-American heritage.

30.     The plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of the defendants's discriminatory practices unless and until this court grants appropriate relief.

31.     **Facts Common to all Causes of Action by James Hines**

(a) At all times herein mentioned, and commencing in or about April 1996, the plaintiff suffered from a heart condition, and commencing in or about January 2000, the plaintiff suffered an injury to his back, including a slipped disc, and plaintiff then suffered, and still suffers, from a disability as defined in the Americans with Disabilities Act and New York State Executive Law, also known as the New York Human Rights Law.

(b)     Initially, and as an accommodation to his disability, plaintiff was assigned to the Kingsland Yard where the physical work was less strenuous than at other yards operated by the Department of Transportation.

(c)     Upon returning to work in or about April 2000, after being out on sick leave due to the injury to his back, plaintiff was transferred from the Kingsland Yard to the Pulaski Yard, where it is commonly known that the work is physically much more strenuous than at the Kingsland Yard.

-23-

(d)     Plaintiff, James Hines, notified the Department of Transportation that the physical labor at the Pulaski Yard was, because of his disabilities, too strenuous and dangerous to his health and well-being and plaintiff requested a reasonable accommodation of a transfer either to the Kingsland Yard or some other yard operated by the Department of Transportation where the work would be less physically strenuous.

(e)     The Department of Transportation refused to accommodate the plaintiff's disability and refused to transfer him from the Pulaski Yard to another yard where the work was less strenuous.

(f)     On or about the 18th day of December 2000, plaintiff, James Hines, filed a Complaint with the New York City Commission on Human Rights alleging that the defendants, New York City Department of Transportation and Erwin Cohen, discriminated against him by denying him a reasonable accommodation of his disabilities.

(g)     Notwithstanding plaintiff's disabilities and the fact that his disabilities were known to the defendants herein, plaintiff was directed to perform strenuous manual physical labor which created a danger to him and an exacerbation of his disabilities.

(h)     On or about January 5, 2001, plaintiff was directed to put a snow blower on a Department of Transportation truck. No assistance was rendered, no ramp was provided and as a result the plaintiff fell and was taken to the hospital with head and back injuries and chest pains.

(i)     Plaintiff, James Hines, continued to request of the Department of Transportation and his supervisors that he be transferred to a yard where the work was less strenuous or that the work that he was directed to perform be less strenuous and involve no heavy lifting. The

-24-

defendants ignored the plaintiff's reasonable request for an accommodation.

      **(j)**     In or about the month of January 2003, while the plaintiff was shoveling snow at the direction of his supervisors, he suffered pain in his chest and was taken to Mount Sinai Hospital.

      **(k)**     In or about July 2003, plaintiff was directed by his supervisors to pick debris consisting of heavy material. He suffered pains in his chest and was taken by ambulance to Victory Memorial Hospital.

      **(l)**     In or about December 2003, plaintiff was directed to perform strenuous work and while doing so, fell off a Department of Transportation truck, experience back, neck, arm and leg pain.

      **(m)**     After each of the above incidents, the plaintiff notified the Office of the EEO at the Department of Transportation requesting a transfer to a less strenuous yard. The defendants continued to ignore the requests of the plaintiff for a reasonable accommodation of his disabilities.

      **(n)**     In or about March 2001, all personnel of the Department of Transportation then eligible to be made a Highway Repairer were, in fact, made a Highway Repairer, except for plaintiff, James Hines, and plaintiff, Dunel Cadely.

      **(o)**     In or about February or March 2001, defendant, Anthony Napolitano, told plaintiff, James Hines, that he was going to "get his black ass" and that he would not be promoted. Plaintiff, James Hines, complained to the Office of the EEO at the Department of Transportation and spoke personally with Ann Williams, to no avail. Thereafter, plaintiff, James Hines, spoke with Leon Haywood, an African-American who was Assistant Commissioner of the Department of

Transportation, and told Mr. Haywood about his failure to be promoted. Shortly thereafter, and through the intervention of Mr. Haywood, plaintiff, James Hines, was finally promoted to Highway Repairer

(p)     In or about August 2001, plaintiff, James Hines, met with defendant, Ann Williams requesting to be transferred out of the Pulaski Yard as an accommodation to his disabilities. Defendant, Ann Williams, told the plaintiff that she would transfer him to the Flatbush Yard where the work is just as hard as the Pulaski Yard. This did not constitute a reasonable accommodation of the plaintiff's disabilities and the plaintiff was forced to remain at the Pulaski Yard.

(q)     The discriminatory practices of supervisory personnel of the Department of Transportation at the Pulaski Yard was so pervasive and was the subject of so many complaints that personnel from the EEO Office of the Department of Transportation "set up shop" at the Pulaski Yard. Nothing changed as a result of intervention by the EEO Office.

(r)     In or about April 2002, plaintiff, James Hines, discovered an offensive photograph of several black men in blindfolds with a legend indicating that one of them was plaintiff, Dunel Cadely. Plaintiff, James Hines, was insulted, humiliated and offended by this blatant discriminatory act and sent the offensive picture to Iris Weinshall, Commissioner of the Department of Transportation, as well as to defendant, Ann Williams. No disciplinary action was taken, notwithstanding the request therefor by both plaintiffs herein.

(s)     Subsequently, it was determined that one, Anthony Iruzari, an employee of the Department of Transportation was the person who exhibited the offensive photograph and placed

the legend thereon. The plaintiff, James Hines, confronted defendant, Anthony Napolitano, about this situation and when plaintiff turned to leave, defendant Napolitano followed him and said "Why are you acting like an animal, nigger?"

        (t)     On several occasions, defendant, Anthony Napolitano, told plaintiff, James Hines, that he would never grant a limited duty assignment "to a nigger like Hines." This statement was made in the presence of a supervisor of the Department of Transportation.

        (u)     Between April 2000 and April 2003, plaintiff, James Hines, submitted numerous transfer requests to his immediate supervisor, James Campbell, in addition to the requests made to defendant, Ann Williams. No reasonable accommodation was ever granted to plaintiff, James Hines.

        (v)     Plaintiff, James Hines, repeatedly notified defendants, Local 376 of District Council 37, Gene DeMartino and Thomas Katou of the difficulties he was experiencing and of the fact the he had requested and was denied repeated requests for reasonable accommodation for his disabilities, and that he was being subjected to racial slurs, racial abuse and a hostile work environment. Neither Local 376 of District Council 37, Gene DeMartino nor Thomas Katou took any effective action whatsoever to intercede on plaintiff's behalf.

        (w)     On May 17, 2003, plaintiff, James Hines, was laid off by the Department of Transportation. This followed the hiring by the Department of Transportation of 8 Traffic Device Maintainers to the position of Highway Repairers, two of whom were hired just a few months prior to the plaintiff's layoff. Upon information and belief, seven of the Traffic Device Maintainers were white.

-27-

(x)     Upon information and belief, out of more than 700 Highway Repairers then employed by the New York City Department of Transportation, plaintiff, James Hines, (together with plaintiff, Dunel Cadely) were the only Highway Repairers laid off by the Department of Transportation. Plaintiff, James Hines, contends that his layoff was the direct result of racial discrimination and retaliation for having filed complaints with the New York City Commission on Human Rights.

(y)     In or about May or June 2003 and upon learning that he would be laid off, plaintiff, James Hines, notified his union, Local 376, but the union did nothing more than send one letter to the Department of Transportation.

(z)     On or about June 24, 2003, plaintiff, James Hines, received a call from the Personnel Department of the New York City Department of Transportation advising that could return to work. After waiting all day at 40 Worth Street, New York, New York for their personal items and identification cards and their work assignment, plaintiff, James Hines, was advised that if he was to return to work, it would be at the lower position of Assistant Highway Repairer. Because plaintiff, James Hines, could not afford to be out of work any longer, he reluctantly felt compelled to return to work at the lower position.

(aa)    On or about the 29th day of December 2003, the plaintiff, while engaged in his employment with the New York City Department of Transportation, fell off the top of a truck and was taken by ambulance to the hospital. Thereafter, and through on or about June 30, 2004, plaintiff was placed on limited duty assignment by the New York City Department of Transportation.

(bb)    On or about July 2004, plaintiff, while working at the Flatlands Yard, suffered chest pains requiring hospitalization. Once again, plaintiff's injuries and illness were a direct result of the strenuous work requirements and the failure and refusal of the Department of Transportation to have granted the plaintiff the reasonable accommodation of transfer to a less strenuous work assignment.

(cc)    Between the period July 1, 2004 and December 2004, the New York City Department of Transportation refused to allow plaintiff to work unless the plaintiff engaged in full duty without a reasonable accommodation or limited duty assignment. The plaintiff was not medically able to perform certain of the strenuous work, such as pothole repair, furnished the New York City Department of Transportation with medical evidence thereof, but the New York City Department of Transportation continued to refuse to accommodate the plaintiff's disability.

(dd)    In or about January/February 2005, the plaintiff, while engaged in his employment without a reasonable accommodation and without a limited duty assignment, suffered a syncope episode while engaging in the strenuous activity of pothole repairs requiring the plaintiff's further hospitalization.

(ee)    Plaintiff continued to request a reasonable accommodation of his disability from the New York City Department of Transportation, but during the period January/February 2005 through October 10, 2005, the New York City Department of Transportation refused to grant the plaintiff a reasonable accommodation or a limited duty assignment.

(ff)    On or about October 11, 2005, the New York City Department of Transportation offered plaintiff various options with regard to the work that he would perform, and

-29-

the plaintiff selected his place of work as the Flatlands Yard and the nature of the work as asphalt cementing joints and hardware.  When plaintiff returned to work with the understanding that he would be performing the aforementioned work, he was required to perform pothole repairs which is too strenuous for his medical condition.

   **(gg)** On or about January 11, 2006, plaintiff again suffered a syncope episode while performing pothole repair work and was again hospitalized.  Plaintiff was out of work between approximately January 12, 2006 and March 5, 2006.

   **(hh)** Upon returning to Flatlands Yard, plaintiff reasonably expected that he would be permitted to perform the work that the New York City Department of Transportation had earlier agreed to, i.e., asphalt cementing joints, but plaintiff's supervisor required the plaintiff to perform pothole repairs and shovel asphalt, both of which were too strenuous and physically difficult to accommodate the plaintiff's disability.

   **(ii)** Subsequent thereto, Ann Williams, on behalf of the New York City Department of Transportation, advised plaintiff that he could perform safety duties, which did not involve strenuous labor.  Plaintiff performed those duties until in or about November or December 2006, at which time his supervisor required plaintiff to perform pothole repair notwithstanding that plaintiff told his supervisor of his disability and that he had an accommodation through Ann Williams.  Plaintiff's supervisor refused to accommodate plaintiff's disability and when plaintiff refused to perform the strenuous duty of pothole repairs and sweeping asphalt, his supervisor filed a grievance against him.

**(jj)**    On or about December 19, 2006, and notwithstanding that the plaintiff, after a grievance hearing plaintiff was found not to have violated DOT rules or regulations and that the performance of the work as required by the plaintiff's supervisor would jeopardize plaintiff's health, safety and welfare, the New York City Department of Transportation continued to require plaintiff to perform pothole repair work.  Plaintiff then suffered another syncope incident and has been out of work from January 2007 to the date hereof.

**(kk)**    The failure to accommodate plaintiff's disability was motivated not only by retaliation, but also by the racial discrimination and hostile work environment created and perpetuated by the defendants herein.

**(ll)**    The foregoing instances of discriminatory conduct and practices by the defendants are but a few of the events, occurrences and instances of discriminatory practices and conduct of the defendants against this plaintiff.

**(mm)**   At all times herein mentioned, plaintiff's performance of his work and the duties required of him were satisfactory and he was not prevented from performing in a reasonable manner the activities involved in his job with the defendant.

### AS AND FOR A NINTH CAUSE OF ACTION BY PLAINTIFF JAMES HINES AGAINST DEFENDANTS, THE NEW YORK CITY DEPARTMENT OF TRANSPORTATION, ERWIN COHEN, ANTHONY NAPOLITANO and DANIEL MANDO

29.    Plaintiff, James Hines, repeats, reiterates and realleges each and every allegation set forth in Paragraphs 1 through 28 above with the same force and effect as if same were set forth at length herein

30.     The defendants have discriminated against the plaintiff by denying plaintiff a reasonable accommodation of his disabilities in violation of the Administrative Code of the City of New York, the New York State Human Rights Law, and the Americans with Disabilities Act.

31.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of defendants' discriminatory practices unless and until this court grants appropriate relief.

### AS AND FOR A TENTH CAUSE OF ACTION BY PLAINTIFF JAMES HINES AGAINST DEFENDANTS, THE NEW YORK CITY DEPARTMENT OF TRANSPORTATION, ERWIN COHEN, ANTHONY NAPOLITANO and DANIEL MANDO

32.     Plaintiff, James Hines, repeats, reiterates and realleges each and every allegation set forth in Paragraphs 1 through 31 above with the same force and effect as if same were set forth at length herein.

33.     The defendants have discriminated against the plaintiff by denying him equal terms and conditions of employment because of his disabilities and because of his opposition to discriminatory practices, have denied him a reasonable accommodation of his disabilities in retaliation for his opposition to discriminatory practices, all in violation of the Americans with Disabilities Act, the New York State Human Rights Law, and the Administrative Code of the City of New York.

34.     The plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of the defendants' discriminatory practices unless and until this court grants appropriate relief.

### AS AND FOR AN ELEVENTH CAUSE OF ACTION BY PLAINTIFF JAMES HINES AGAINST DEFENDANTS, THE NEW YORK CITY DEPARTMENT OF TRANSPORTATION, ERWIN COHEN, ANTHONY NAPOLITANO and DANIEL MANDO

35.    Plaintiff, James Hines, repeats, reiterates and realleges each and every allegation set forth in Paragraphs 1 through 34 above with the same force and effect as if same were set forth at length herein.

36.    The defendants have discriminated against plaintiff, James Hines, by denying him equal terms and conditions of employment and failing to accommodate his disability because of his race.

37.    The plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of the defendants's discriminatory practices unless and until this court grants appropriate relief.

### AS AND FOR A TWELFTH CAUSE OF ACTION BY PLAINTIFF JAMES HINES AGAINST DEFENDANTS, THE NEW YORK CITY DEPARTMENT OF TRANSPORTATION, ERWIN COHEN, ANTHONY NAPOLITANO and DANIEL MANDO

38.    Plaintiff, James Hines, repeats, reiterates and realleges each and every allegation set forth in Paragraphs 1 through 37 above with the same force and effect as if same were set forth at length herein.

39.    Plaintiff, James Hines, charges that defendants have discriminated against him by retaliating against him for his opposition to discriminatory practices and in retaliation for his filing complaints with the New York City Commission on Human Rights.

-33-

40.     The plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of the defendants's discriminatory practices unless and until this court grants appropriate relief.

**AS AND FOR A THIRTEENTH CAUSE OF ACTION BY PLAINTIFF JAMES HINES AGAINST DEFENDANTS, LOCAL 376 OF DISTRICT COUNCIL 37 OF THE AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, TOMMY KATOU AND GENE DEMARTINO**

41.     Plaintiff, James Hines, repeats, reiterates and realleges each and every allegation set forth in Paragraphs 1 through 40 above with the same force and effect as if same were set forth at length herein.

42.     These defendants have discriminated against the plaintiff by denying him equal representation because of his race and by failing to provide plaintiff with the same representation as these defendants afford other members of their union who are not of African-American heritage.

43.     The plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of the defendants's discriminatory practices unless and until this court grants appropriate relief.

**AS AND FOR A FOURTEENTH CAUSE OF ACTION BY PLAINTIFF JAMES HINES AGAINST DEFENDANTS, THE NEW YORK CITY DEPARTMENT OF TRANSPORTATION, ERWIN COHEN, ANTHONY NAPOLITANO and DANIEL MANDO, LOCAL 376 OF DISTRICT COUNCIL 37 OF THE AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, TOMMY KATOU AND GENE DEMARTINO**

44.     Plaintiff, James Hines, repeats, reiterates and realleges each and every allegation set forth in Paragraphs 1 through 43 above with the same force and effect as if same were set forth at length herein.

## Certificate of Service

ARTHUR L. SPIRN, certifies that the attached Amended Complaint was served by United States mail on April 3, 2007, upon Stuart Lichten, attorney for defendants Local 376, Gene DeMartino and Thomas Katou, 113 University Place, New York, New York 10003 and Phyllis Calistro, Esq., Assistant Corporation Counsel, N.Y.C. Law Department, attorney for defendants, New York City Department of Transportation, Anthony Napolitano and Michael Cummiskey, 100 Church Street, New York, New York 10007-2601.

Dated: Hempstead, New York
April 3, 2007

Arthur L. Spirn (6214)