Exhibit 6



Queens-Long Island
Medical Group, P.C.



PLAINTIFF'S EXHIBIT
10/5/07 EDO

October 18, 2005

Re: James Hines

To Whom It May Concern:

I am writing this note on behalf of James Hines, a Highway Repairer for the New York City Department of Transportation, who has been our group patient for over 15 years. Mr. Hines is currently under our care for his faster heart rate, multiple syncope, his back pain problems, which involves a bulging disk, and chest surgery for bronchogenic cyst.

He has undergone a complete workup to determine the cause of his faster heart rate and syncope; he has also been seen by multiple specialist. To date, it is not clear what is causing his condition. He is currently on medication to slow his heart rate and the treatment is meeting with some success. He continues to see me and I will be conducting further tests to arrive at a more definitive diagnosis.

Mr. Hines has undergone physical therapy for his bulging disk and as a result of that therapy, it is less of a problem at this point in time.

Mr. Hines has asked me for a note indicating what work he can perform given his conditions. I have had an extensive discussion with Mr. Hines about the kind of work he will be asked to perform when he returns to work at his position.

Based upon my review of his medical records, my discussion with Mr. Hines and his family, my opinion is that Mr. Hines is medically capable of returning to work on a full time basis in his Highway Repairer job and can perform all the duties of the job except strenuous activities and operation of a jackhammer.

If you have any further questions about Mr. Hines' condition or this note, do not hesitate to call me.

Sincerely,

S. LOGOPONKUL, M.D.

AW090

Exhibit 7



**New York City Department of Transportation**

Iris Weinshall, Commissioner

Equal Employment Opportunity
40 Worth Street, Room 828
New York, New York 10013
Tel: 212/442-7760  Fax: 212/442-1908

TTY: 212/341-9884

November 18, 2005

Leonard D. Polletta, Esq.
Assistant General Counsel
District Council 37
125 Barclay Street
New York, N.Y. 10007-2179

Re: James Hines – Request for Reasonable Accommodation

Dear Mr. Polletta:

    Thank you for your faxed letter received today in reference to the accommodation for Mr. James Hines.

    Mr. Hines should report to work on Monday, December 19, 2005, at 7 a.m. He will see Mr. David McCarthy, Area Supervisor of Roadway, Repair & Maintenance. The assignment of "Asphalt Cementing Joints and Hardware," is at the following location:

> Flatlands Yard
> 6080 Flatlands Ave., Brooklyn, N.Y.
> Telephone: 718/251-6044

    Good Luck to Mr. Hines and if you have any questions, please give me a call at 212/442-7760.

Sincerely,

Ann Williams
Assistant Commissioner/EEO Officer

c: Phyllis Calistro, Esq.
   Gene DeMartino
   D/C Fraud
   D/C Cannisi
   A/C Hochstadt
   M. Fredericks/Agency Attorney

DIAL Government Services
311 & Information for NYC

# Exhibit 8



PLAINTIFF'S EXHIBIT 6 10/5/07

*Dep't of Transportation v. Hines*
OATH Index No. 790/07 (Feb. 9, 2007)

ALJ recommends dismissal of disciplinary charges against a highway repairer who suffered from syncope, or blackouts, who refused orders to perform certain duties because he had a reasonable belief that the work would endanger his health or safety.

## NEW YORK CITY OFFICE OF ADMINISTRATIVE TRIALS AND HEARINGS

*In the Matter of*

**DEPARTMENT OF TRANSPORTATION**
*Petitioner*
*against*
**JAMES HINES**
*Respondent*

## REPORT AND RECOMMENDATION

**TYNIA D. RICHARD,** *Administrative Law Judge*

This is a disciplinary proceeding referred by the Department of Transportation ("the Department") pursuant to section 75 of the Civil Service Law. Respondent James Hines, a highway repairer, is charged with improperly refusing on two occasions to obey orders from his supervisors to perform assigned tasks, which included sweeping gutters and repairing potholes.

A hearing was held before me on December 19, 2006. Petitioner presented the testimony of Marcia Sampson and Dr. Arnold Berlin. Respondent testified on his own behalf.

For the reasons set forth below, I recommend dismissal of the charges.

### ANALYSIS

The parties stipulated that on September 29, 2006, respondent refused to comply with an order from his supervisor to sweep a gutter area with a push broom and, on and October 4, 2006, respondent refused to comply with an order from his supervisor to perform various pothole assignments including shoveling, tampering, and raking asphalt, as alleged in the charges (Tr. 4-5). The only question before me, therefore, is whether there is any applicable exception to the familiar principle known as "obey now, grieve later" that would relieve respondent of his

-2-

obligation to obey his supervisors' orders. Respondent contends he is entitled to the exception accorded for orders that pose a threat to a person's health or safety.

Respondent suffers from syncope, a medical condition manifested by blackouts (Tr. 25, 28, Pet. Ex. 3). When it occurs, he experiences flashes of perspiration and his heart quickens, then he passes out and awakens on the ground (Tr. 29). He has medication for his condition, which he takes when he feels it coming on.

Respondent was first diagnosed with the condition in 2001 (Tr. 34). On the job in 2002, he experienced a fainting spell and lost consciousness while performing pothole work (Tr. 28). After an episode in 2003, respondent was placed on "limited duty," and then in June 2003, the Department put him on unpaid leave because of the condition (Tr. 29). On November 18, 2005, an agreement was reached about a reasonable accommodation for respondent through negotiations between his union attorney, Leonard Polletta, and the Department's EEO Officer Ann Williams, and respondent was returned to work in January 2006 (Resp. Ex. A, Tr. 80). The details of the accommodation were never reduced to writing, however, and are now in dispute.

According to respondent, when he returned to work in January 2006, he was given "safety" assignments, which included "helping pedestrians cross the street, backing up trucks, making the intersections clear and clear of cars and pedestrians" (Tr. 30-31). Also, at work sites, where the crew was performing paving and milling work, he used flags to direct the flow of traffic.

He continued in these assignments until September 29, 2006, when he was directed to use a push broom to sweep gravel into a gutter area (Tr. 32). He had not performed these duties since he returned to work in early 2006. On October 4, 2006, respondent was told to perform a pothole assignment that included shoveling, tampering and raking asphalt. Since his return to work, he had not been asked to perform pothole work either. He testified that he told his supervisors he could not perform the work because of his syncope. At the time, he was worried about his health and believed that his accommodation excluded those assignments (Tr. 32-33). Since then, he has not performed any pothole work, although he has performed some sweeping duties. He has also not refused any orders since then. On October 5, 2006, respondent was examined by his physician who determined that he is "not to have any strenuous work activity and no pothole work activity... [until] further notice. (Pet. Ex. 1)

-5-

On October 6, 2006, the Department ordered respondent to a medical examination to determine whether he was fit to perform the duties of a highway repairer pursuant to section 72 of the Civil Service Law (Tr. 12). On October 13, 2006, Dr. Arnold Berlin conducted an independent medical examination of respondent (Tr. 19). In his report, Dr. Berlin noted that respondent's past medical history was "significant" for at least four episodes of syncope (Pet. Ex. 1, p. 1). The report also noted that respondent had two surgeries for the removal of bronchogenic cysts and had no significant pulmonary or cardiac history.

The doctor testified that respondent is physically fit to perform his duties as a highway repairer except for jack hammering (Tr. 22). He qualified his testimony, however, by explaining that he had not determined that respondent required an accommodation for jack hammering; rather, he was merely noting it as a pre-existing accommodation that he "saw no reason to tamper with" (Tr. 23-24). He conceded that he conducted no mechanical tests that would monitor respondent's physical response to strenuous activity. He stated that he had respondent perform exercises to measure his blood pressure and pulse response, but he made no note of it in his report. His exam was concluded in 12 minutes.

Dr. Berlin said that he learned during the examination that respondent's blackouts had occurred on the job; he did not recall whether they occurred during pothole work. Under cross-examination, Dr. Berlin agreed that blackouts could be triggered by strenuous activity and that pothole work with a heavy scepter broom on a highway could trigger a syncope blackout in persons who have been diagnosed with that condition (Tr. 24-25). Finally, contrary to his original conclusion, he conceded that the fact that respondent suffered from episodes of syncope might in fact preclude him from performing his duties as a highway repairer (Tr. 26).

Respondent contends that he was justified in refusing to obey the supervisors' orders because he reasonably believed that performing the tasks he was assigned would endanger his health and safety. This affirmative defense is respondent's burden to prove. Therefore, the question before me is whether respondent has satisfied his burden of proving that he was justified in refusing to obey his supervisors' orders.

As a general rule, an employee is required to obey a supervisor's order when it is given. If the employee believes the order to be improper, his remedy is to file a grievance at a later date. *Dep't of Environmental Protection v. Mosley*, OATH Index No. 1893-05 (Feb. 28, 2006), *aff'd in part, rev'd in part, modified on penalty*, Comm'r Dec. (Apr. 5, 2006), *aff'd*, NYC Civ. Serv.

-4-

Comm'n Item No. CD06-16-SA (Dec. 29, 2006). The burden of proof is on the respondent to demonstrate, by a preponderance of the credible evidence, that he is entitled to claim an exception to the "obey now, grieve later" principle which exempts him from compliance with an agency order. *Health & Hospitals Corp. (Coler Goldwater Hosp.) v. Gunkson*, OATH Index No. 1510/04, at 4 (Nov. 21, 2004); *Human Resources Admin. v. Minono*, OATH Index No. 1512/03, at 13-16 (May 16, 2003). One such exception involves orders that "would threaten the health or safety of any person" if followed. *See Lazzeri v. New York State Thruway Auth.*, 62 N.Y.2d 858, 477 N.Y.S.2d 484 (1984); *see also Reyes v. Kirby*, 62 Misc.2d 632, 309 N.Y.S.2d 88 (Sup. Ct. Suffolk Co. 1968), *aff'd*, 31 A.D.2d 1008, 299 N.Y.S.2d 898 (2d Dep't 1969) (health or safety exception applied where respondent was ill and physically unable to respond to order to return to work). To establish this exception, respondent must demonstrate that the health threat was not only "imminent and serious" but also that his assessment of the risk was reasonable and was the actual reason for his conduct. *Dep't of Sanitation v. Keyes*, OATH Index No. 187/06 (Nov. 18, 2005) citing *Dep't of Probation v. James*, OATH Index No. 515/98 at 9-10 (Feb. 5, 1998), *aff'd* NYCCS Serv. Comm'n Item No. CD98-112 (Dec. 15, 1998); *Dep't of Parks and Recreation v. Koch*, OATH Index No. 105/87 at 6 (Mar. 20, 1987).

Based on respondent's established medical history, I find that the health threat to respondent was imminent and serious if he had performed the assigned tasks. The work in question – pushing gravel on a highway and raking asphalt for potholes – is laborious and had resulted in respondent having blackouts in the past. A sudden loss of consciousness while at work on road projects could result in serious harm to respondent or to others. *See Dep't of Sanitation v. Keyes*, OATH 187/06, at 4 (vertigo was an imminent and serious health threat to employee ordered to drive through the Lincoln Tunnel to New Jersey to investigate an accident).

The reasonableness of respondent's risk assessment also was established. Respondent had suffered multiple episodes of lost consciousness on the job, once while performing pothole work. As a result of this, he had worked for the prior eight months on limited duty that did not include this strenuous work. In addition, petitioner had granted him a reasonable accommodation. The mildly physical "safety" work that respondent was assigned since returning to work could reasonably have convinced him that his accommodation excluded any more rigorous work. This is further supported by the only written memorial of the accommodation, which appears to exclude the type of work respondent was ordered to perform.

-5-

Although the content and scope of the reasonable accommodation was in dispute, respondent's belief about what it excluded was reasonable. Respondent testified that his reasonable accommodation was to be assigned to "cementing and joints" (Tr. 40). A letter that respondent's union attorney wrote at the close of negotiations memorializing the agreement appears to confirm this. The letter states "Mr. Hines has decided to accept the [Department's] offer to return him to work at the Flatlands Yard performing in the assignment described as Asphalt Cementing Joints and Hardware'" (Resp. Ex. A). Petitioner did not present a witness knowledgeable about the accommodation to confirm or deny this. Respondent stated that contrary to the agreement, he was never given the cementing and joints position, a position that does not involve pothole or gutter sweeping work (Tr. 45, 46). Petitioner's witness, Marcia Sampson, was the principal administrative assistant who prepared respondent's section 72 notice. She testified that she knew nothing about respondent's medical condition or his accommodation (Tr. 15-17).

The Department argued that respondent's accommodation only exempted him from jackhammer work (Tr. 5) but the Department put on no witness who could attest to that contention.[1]

Dr. Berlin's testimony about the nature of respondent's medical condition only supported my conclusions about the imminence and seriousness of the threat and the reasonableness of respondent's assessment. The doctor confirmed that strenuous activity of the kind that respondent was asked to perform could trigger an episode of syncope in a person diagnosed with the condition (Tr. 28). Moreover, he conceded that the fact that respondent suffered from episodes of syncope might in fact preclude him from performing his duties as a highway repairer.

The doctor's note subsequently obtained from respondent's physician also confirmed that he should not be performing strenuous pothole work (Pet. Ex. 1, p. 8).

I have determined that respondent's assessment of the risk posed to his health by his assigned tasks was reasonable. I also conclude that the potential threat to respondent's health

---

[1] Dr. Berlin's claim that respondent told him his accommodation was limited to jack hammering work and not responsible for the testimony of a department employee familiar with the agreement. I found it more likely that the doctor, who spent only 12 minutes examining respondent, obtained his knowledge from the statement of the section 72 notice which stated "Although he is excused from performing jack hammering duties pursuant to his request, he is required to perform all other highway Repairer duties", rather than respondent himself (Pet. Ex. 1). Since Ms. Sampson, who prepared the section 72 notice, had no personal knowledge of respondent's claim of accommodation, it is unclear how the statement "pursuant to his request" was inserted into the notice.

-6-

was the actual reason why he refused to perform the tasks assigned. No other reason was offered as to why respondent would disobey the orders. There was no testimony that respondent was someone who sought to avoid work or was motivated to be insubordinate to his supervisors.

Accordingly, I find that respondent sustained its burden of proving that he reasonably assessed the risk to him of performing assigned tasks that posed an imminent and serious health threat and that his assessment was the actual reason for his conduct.

I should note that this recommendation is made based upon what this tribunal finds to be respondent's reasonable belief. If the task of the tribunal today was to make a finding as to the precise scope and contour of the accommodation, I would be at a loss to do so, inasmuch as the Department produced no witness or documentary evidence on the matter that would help provide a full picture of the parties' intent. I would suggest that the parties come to a clear agreement of what respondent's accommodation includes and excludes so this issue does not arise again.

## FINDING AND CONCLUSION

The Department failed to establish that respondent, who suffered from syncope, or blackouts, committed misconduct on September 29, 2006, and October 4, 2006, by refusing his supervisors' orders to perform work that he reasonably believed would injure his health or safety.

## RECOMMENDATION

I recommend the charges be dismissed.

Tynia D. Richard
Administrative Law Judge

February 9, 2007

SUBMITTED TO

**IRIS WEINSHALL**
*Commissioner*

APPEARANCES
**RASHANA CAIN, ESQ.**
*Attorney for Petitioner*

-7-

BROWN & CROPPER, LLP
*Attorneys for Respondent*
BY: JAMES A. BROWN, ESQ.

# Exhibit 9



# New York City
# Department of Transportation

Iris Weinshall, Commissioner

Equal Employment Opportunity
40 Worth Street, Room 828
New York, New York 10013
Tel: 212/442-7760  Fax: 212/442-1908
TTY: 212/341-0884


March 9, 2007

Mr. James Hines
438 Beach 40th St.
Apt. 5A
Far Rockaway, N.Y. 11691

Re: Reasonable Accommodation Request

Dear Mr. Hines,

In reference to the above, a meeting was held in the Equal Employment Opportunity Office on March 7, 2007, to discuss your abilities to perform your duties based on medical documentation.

In accordance with the Americans with Disabilities Act, your job functions were reviewed and seven (7) Tasks and Standards that are minimally strenuous were selected within your title for your performance. You informed us that you would like to have your doctor review them and get back to us.

We expect a response to this request as soon as possible and if you have any questions, please do not hesitate to contact us at 212/442-7760.

Sincerely,

Ann Williams
Assistant Commissioner/EEO Officer

c: Leonard Polletta, Esq.
   Gene DeMartino
   David Catala
   Phyliss Calistro, Esq.
   Michelle Fredericks, Esq.
   Madeline Nazario

# Exhibit 10 (a) (b)

American Federation of State, County & Municipal Employees, AFL-CIO
125 BARCLAY STREET • NEW YORK, NY 10007-2179

LEGAL DEPARTMENT
Telephone: 212-815-1450
Fax: 212-815-1440



District Council 37

EDDIE M. DEMMINGS
  *General Counsel*

MARY J. O'CONNELL
  *Associate General Counsel*

ROBIN ROACH
  *Senior Assistant General Counsel*

June 4, 2007



PLAINTIFF'S EXHIBIT 16

**BY FAX AND FIRST CLASS MAIL**
Ms. Ann Williams
Assistant Commissioner and EEO Officer
New York City Department of Transportation
40 Worth Street, Rm. 828
New York, NY 10013

RE:  **James Hines**
     **[Request to Return to Work]**

Dear Ms. Williams:

Enclosed you will find a medical note signed by Dr. Lesopankul, James Hines' doctor, clearing Mr. Hines to return to work and to perform all seven tasks which the Department of Transportation has found to be the essential functions of the Highway Repairer title. You will also find a signed copy of the Tasks and Standards Information Sheet with Mr. Hines' consent to return to work performing those essential functions.

As you can see from Dr. Lesopankul's note, Mr. Hines has been cleared to return to work on June 18, 2007. You can contact Mr. Hines directly to discuss the arrangements necessary for his return to work.

If you have any questions, please feel free to call me.

Very truly yours,

Leonard D. Polletta
Assistant General Counsel

cc:  James Hines
     Gene DeMartino
     Eddie M. Demmings, Esq.
     Mary J. O'Connell, Esq.
     Robin Roach, Esq.
     Arthur Spirn, Esq.
/Dr'l Hines RTW letter 060407.doc

06/14/2007  12:29   7186692475                                                PAGE  01

# QLI
### QUEENS-LONG ISLAND MEDICAL GROUP, P.C.

6/3/07

To whom it may concern
Re: James Mines

The above patient was seen and is been follow-up by Dr. Le. Mr Hines may return to work on 6/19/07 and he is able to perform all seven job assignment.

Thank you.

Dawes

B. LOSOPONKUL, M.D.
QUEENS-L.I. MEDICAL GROUP, P.C.
25-15 Far Rockaway Blvd.
Far Rockaway, NY 11691