# UNITED STATES DISTRICT COURT
## for the
## SOUTHERN DISTRICT OF NEW YORK

Plaintiffs,

04-CV-8196 (NRB)

Defendants.

Dated:   December 11, 2007

## TABLE OF CONTENTS

TABLE OF CASES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

POINT I . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

DEFENDANTS ARE NOT ENTITLED TO THE "DRASTIC PROVISIONAL REMEDY" OF SUMMARY JUDGMENT AS A MATTER OF LAW WHERE THE EMPLOYER'S INTENT TO DISCRIMINATE IS AT ISSUE . . . . . . . . . . . . . . . . . . . . . . . . 5

POINT II . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

PLAINTIFF'S SYNCOPE CONSTITUTES A DISABILITY UNDER THE ADA . . . . . . . . . . 7

A. Syncope Constitutes an Impairment Under the ADA . . . 7

B. Syncope Substantially Limits Plaintiff's Major Life Activities . . . 9

C. Plaintiff's Medication does not Eliminate His Disability . . . . 12

D. Plaintiff is Qualified to Perform the Duties of Highway Repairer . . . . 15

E. Plaintiff Can Perform the Essential Duties of Highway Repairer with Reasonable Workplace Accommodations . . . 17

POINT III . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

EVEN IF PLAINTIFF IS NOT DISABLED HE WAS REGARDED AS DISABLED AND HAS A RECORD OF A DISABILITY, WHICH MAKES HIM A "QUALIFIED INDIVIDUAL WITH A DISABILITY" UNDER THE ADA . . . . . 20

A. Defendants Regarded Plaintiff as Disabled . . . . . . . . . . 20

B. Plaintiff is Disabled Because he has a Record of a Disability . . 22

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

TABLE OF CASES

Bates v. Long Island Rail Road Company, 997 F.2d 1028 (2c Cir. 1995) . . . . . . . . . . . . . . . . 12

Chambers v. ... TRM ... Copy Centers ... Corp., 43 F.3d 29 (2d Cir. ... 1994) . . 6

... ... ... Steel Electric ... ... ... ... ... ... ... ... ... 1993 . . . 5, 6

D'Amico v. City of New York, 132 F.3d 145 (2d Cir. 1998) . . . . . . . . . . . . . . . . . 15, 16

Fleming v. Verizon New York, Inc., 01 CV ... 2006 WL ... (S.D.N.Y. Nov. ..., 2006) . . . 10

Francis v. City of Meriden, 129 F.3d 281 (2d Cir. 1997) . . . . . . . . . . 10

G... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... 5

G... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ...

Goodman v. City of New York, 92 F.3d 200 (2d Cir. 2003) . . . . . . . . . . . . . 7

Hedrick v. Charter Township of Flint, 163 F.3d 76 (6th Cir. 1999) . . . . . . . . . . 16

Heyman v. Queens Village Committee for Mental Health for Jamaica Community Adolescent Program, Inc. 198 F.3d 68 (2d Cir. 1999) . . . . . . . . . . 10

Loucstianidis v. Chen, 626 F.3d 987 (2d Cir. 2020) . . . . . . . . . . 12

Lane v. Retirement Living Pub. Co., 949 F.2d 496 (2d Cir. 1991) . . . . . . . . . . . . . 15, 16

Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208 (2d Cir. 2001) . . . . . . . . . . 16

M... ... ... ... ... ... ... ... ... ... ... ... ... ... ... ... 5

McCormak v. Long Island Rail Road Company 03 CV 6592, 2006 WL 1400452 (S.D.N.Y. Feb. 23, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 22

Reisner v. General Motors Corp., 671 F.2d 91 (2d Cir. 1982) . . . . . . . . . 11

Russo v. ... ... ... ... ... ... ... ... ... ... ... ... 1994 . . . . . . . . . . . . . . . . 8

Russo v. Sysco Food Services of Albany, LLC, 488 F. Supp.2d 228 (N.D.N.Y. 2007) . . . . . . . 21

School Board of Nassau County v. Arline, 480 U.S. 273 (1987) . . . . . . . . . . . . . . . . . . . . . 22

Schwimmer v. Sony Corp. Of America, 637 F.2d 41 (2d Cir. 1980) . . . . . . . . . . . . . . . . 11

Sista v. CDC Ixis North America, Inc., 445 F.3d 161 (2d Cir. 2006) . . . . . . . . . . . . . . . 7

Sutton v. United Air Lines, Inc., 527 U.S. 471 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . 20

United States v. Diebold, Inc., 369 U.S. 654 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

## PRELIMINARY STATEMENT

Plaintiff worked as a Highway Repairer for the City of New York since 2001. Plaintiff brought numerous causes of action against defendants. Defendants partial motion for summary judgment is solely directed to plaintiff's ADA claims.

Plaintiff suffered repeated attacks of syncope while working for defendants, which caused him to faint. Defendants reassigned plaintiff to asphalt, cementing joints, and hardware fractions, and then to a Safety Position, and then determined plaintiff could not perform the essential functions of the job. Plaintiff submitted numerous medical certifications indicating that he could perform the duties of Highway Repairer, but defendants chose to terminate plaintiff.

In opposition to defendants' motion for summary judgment, plaintiff has established genuine issues of fact that syncope is an impairment that substantially limits major life activities, that he is qualified to perform the essential functions of the job of Highway Repairer with or without accommodations, and that he was disabled, regarded as disabled, and has a record of a disability. Consequently, defendants' motion to dismiss should be denied.

iv

STATEMENT OF FACTS

Plaintiff, James Hines, began working for the New York City Department of Transportation as a full-time Assistant Highway Repairer in 1993 and was promoted to Highway Repairer in 2001. While working as a Highway Repairer, plaintiff suffered various episodes of syncope. On January 5, 2001, plaintiff suffered an attack of syncope while lifting a snow blower machine onto a DoT van. He was admitted to Elmhurst Hospital for injuries he sustained when he fell at the accident (Ex. 3, pp(b)(iv) and p(iv). On August, 8, 2001, plaintiff collapsed and passed out while working in 110 degree temperature. He was taken to St. John's Queens Medical Center (Ex. 3 (iv(b) and p.4). On November 9, 2002, plaintiff was diagnosed as having an enlarged heart (Ex. 11). On January 19, 2003, while taking sand out of the back of the DoT truck, plaintiff felt a sharp pain and fell to the ground hitting his head and back. He was taken to Mt. Sinai Hospital of Queens (Ex. 13(d)b(e) and (d)). On July 8, 2004, while plaintiff was filling potholes on an extremely high temperatures, he felt a sharp pain in his chest and fell to the ground, injuring his left arm, back and head (Ex. 13(a(b)(e) and (d)). On August 24, 2004 while driving a DoT truck with the asphalt, plaintiff felt a sharp pain in his chest, fell to the ground and was taken to Lutheran Medical Center (Ex. 13(a)(b)(e) and (d)). On January 26, 2006, while sweeping and filling potholes all day, plaintiff felt light headed and fell to the ground, hurting his back and head. He was admitted to Long Island College Hospital (Ex. 13(a)(b)(e) and (d)).

As a result, plaintiff's physician, Dr. Lo, diagnosed him with syncope (Ex. 3, pp. 8, 19, 24, 73). Dr. Lo attributed this to plaintiff's increased heart rate, although he could not find any specific cause (Ex. 3, pp. 69, 71, 73, 77, 80).   As a result of his syncope, plaintiff sought

All Exhibits refer to the Exhibit Numbers attached to the Declaration of Arthur Spitz.

1

workplace accommodations.  Ann Williams, EEO Officer with the Department of

Transportation, is the official who determines if an employee should get a reasonable

accommodation (Ex. 2, p. 112).  She testified as follows:

> Q. Initially, as part of your duties and responsibilities, don't you
> determine if a person has disability under the Americans with
> Disabilities Act?
>
> A. Sure, based on the condition diagnosed by the doctor
>
> Q. And did you conclude in Mr. Threet's case that he did have a
> medical condition under the ADA?
>
> A. Sure.  This is the reason why we provided him with function of
> his current

(Ex. 2, p. 116).  Ann Williams knew that Mr. Hines suffered from syncope as far back as 1998 or

1999 (Ex. 2, p. 10).

As a result of his condition, defendants reassigned plaintiff to asphalt, cementing joints

and underwent functions on October 18, 2005 because plaintiff indicated that he could no longer

operate a jackhammer (Ex. 2, p. 2, Ex. 1, 1, 4).  Afterwards, plaintiff was offered a Safety Position

in May 2006 (Ex. 4, pp. 1, 25, 55, 58).  Specifically, Ann Williams testified that a

> safety position can either be one where someone stands at the back
> of a truck, the back of the, beginning of the entrance or the exit of a
> site where they are performing work, waving flag or they sometimes
> sit in a truck, they sit in a truck that blocks the entrance, and that's
> all you do.

(Ex. 2, p. 128).  This safety work was described as "mildly physical" by an Administrative Law

Judge (Ex. 8, p. 4).

Plaintiff has been out of work since January 2007.  On March 9, 2007, defendants then

created a list of 37 Tasks and Standards for the position of Highway Repairer (Ex. 19, 20).

These job functions were imprecise in that they did not state the amount of time an employee has to engage in these functions, the amount of weight involved, or the external conditions (Ex's 19, 20). Dr. Le testified that, in substance, he could not determine an exact amount of weight which plaintiff could safely lift because there are so many variables – the temperature at the time of the lifting, the number of hours engaged in lifting, the amount of weight involved, etc. He testified that "how much a man can lift or push depends upon the circumstances" (Ex. 4, pp. 64-65), which circumstances were not spelled out in the defendant's list of tasks.

These 7 tasks and standards (Ex's 9, 19, 20) confirm that the position of Highway Repairer does not require repetitive, strenuous, heavy labor. Task #1 involves vehicle operation, Task #2 involves equipment maintenance, Task #3 involves maintaining records, Task #4 involves taking proper safety precautions while performing assigned duties, and Tasks #5, #6, and #7 require some physical labor, but not constant, strenuous, heavy physical labor (Ex. 19, 20). Plaintiff is capable of performing these 7 tasks. On March 21, 2007, plaintiff crossed out the tasks that involved laboring related to street maintenance and waste (the next 6 test) (Ex. 19). In addition, next to the vague wording of Task #6 "General Labor, as directed by the Commissioner" (which did not specify the type of duties, duration, or conditions) plaintiff wrote, "To the best of my ability" (Ex. 19). However, plaintiff completed that form (Ex. 19) before he was placed on a new medication as corrected his heartbeat. Later, he and his physician re-executed this form without any restrictions after he had been on medication (Ex. 20).

On June 8, 2007, after plaintiff had been medicated with metoprolol, plaintiff's physician represented that plaintiff could perform "all seven job assignments" (Ex. 19b; 20). Plaintiff corroborated this by letter dated June 25, 2007 (Ex. 11). Ann Williams simply did not "accept

8

the veracity" of the information from the doctor's office (Ex. 2, p. 89), believing instead that the doctor's signature may have been falsified (Ex. 2, p. 102). Next, plaintiff furnished a letter from Dr. Lo (Ex. 21) attesting to his <u>own</u> signature on the previous document (Ex. 20) in which Dr. Lo stated plaintiff could perform the seven essential functions. This was solely to appease the unreasonable standards being imposed by Anne Williams. This, too, was rejected (Ex. 22), thus preventing plaintiff from returning to work. Even a subsequent letter from Dr. Lo stating that, "I have read the above job descriptions. In my medical opinion, the above is well enough to return to work. He was also cleared by his neurologist" (Ex. 23) was rejected by Anne Williams (Ex. 24). To date, the DOE still refuses to permit plaintiff to return to work, because of her disability, record of a disability, and because he is regarded as disabled.

ARGUMENT

POINT I

DEFENDANTS ARE NOT ENTITLED TO THE "DRASTIC
PROVISIONAL REMEDY" OF SUMMARY JUDGMENT AS A
MATTER OF LAW WHERE THE EMPLOYER'S INTENT TO
DISCRIMINATE IS AT ISSUE

A motion for summary judgment succeeds only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Proc. 56(c). In decisions under Rule 56, "[the] inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corporation, 475 U.S. 574, 587 (1986), quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

The Second Circuit has cautioned against the "dangers of robust use of summary judgment to clear trial dockets." Gallagher v. Delaney, 139 F.3d 338, 342 (2d Cir. 1998). It has noted that "[s]ummary judgment should be used 'sparingly' when . . . state of mind and intent are at issue." Dister v. Continental Corp., 859 F.2d 1108, 61 (2d Cir. 1988); see also Gibbs v. Prudential Residential Services, 731 F. Supp. 1229, 1234 (2d Cir. 1993) (emphasis added)("A trial court must be cautious about granting summary judgment to an employer when . . . there, its intent is at issue."); Rosen v. Thornburgh, 928 F.2d 528, 533 (2d Cir. 1991)(in a Title VII action, where a defendant's state of mind and state of mind are placed at issue, summary judgment is ordinarily inappropriate").

Despite defendants' invitation for the Court to do so, this Court cannot try issues of fact -- it can only determine whether there are issues to be tried.  According to the Second Circuit, the Court

> is not to resolve issues of fact, its determination of whether the
> circumstances 'give[s] rise to an inference' of discrimination must be
> a determination of whether the proffered admissible evidence
> shows circumstances that would be sufficient to permit a rational
> finder of fact to infer a discriminatory motive. It is not the
> province of the summary judgment court itself to decide what
> inferences should be drawn.

Chambers v. TRM Copy Centers Corp., 43 F.3d 29, 38 (2d Cir. 1994); see also, Gallo v.

Prudential Residential Corp., 22 F.3d 1219, 1224 (2d Cir. 1994). Consequently, summary

judgment is proper only "[w]hen no rational jury could find in favor of the nonmoving party

because the evidence to support its case is so slight." Gallo, 22 F.3d at 1224.

POINT II

PLAINTIFF'S SYNCOPE CONSTITUTES A DISABILITY
UNDER THE ADA

To establish a prima facie case of discrimination under the ADA, plaintiff must
demonstrate that

(1) the employer is subject to the ADA;

(2) the plaintiff was disabled within the meaning of the ADA;

(3) the plaintiff was otherwise qualified to perform the essential
functions of the position, with or without reasonable accommodation;

(4) the plaintiff suffered an adverse employment action because of
his disability.

Sista v. CDC Ixis North America, Inc., 445 F.3d 161, 169 (2d Cir. 2006); Giordano v. City of
New York, 274 F.3d 740, 747 (2d Cir. 2001). Defendants claim that, as a matter of law, plaintiff
fails to allege or meet the discrimination because he is unable to prove elements (2) and (3). As set
forth herein, plaintiff raised issues of fact regarding these elements.

A.    Syncope Constitutes an Impairment Under the ADA

Under the ADA, an impairment is a

physiological disorder, condition, cosmetic disfigurement or
anatomical loss affecting one or more the major body systems
[neurological, musculoskeletal, special sense organs, respiratory,
cardiovascular, reproductive, digestive, genito-urinary, hemic and
lymphatic, skin and endocrine, or [a]ny mental or psychological
disorder, such as mental retardation, organic brain syndrome,
emotional or mental illness, and specific learning disabilities.

42 U.S.C. 12102(2); 29 CFR 1630.2(h).   In the present matter, plaintiff suffered from a heart
condition in 1996 and thereafter, on six occasions from 2005 through 2006, plaintiff suffered

from syncope causing him to faint on the job. Each time he fainted, he lost consciousness for a temporary duration. Although defendants contend that the medical record is "insufficient to establish that plaintiff suffers form a condition which affects on the major body systems," Dr. Lo testified that, based on the medical record and his observations, plaintiff suffers from syncope which Dr. Lo attributed to plaintiff's increased heart rate (Ex. 5, pp. 69, 71, 73, 77, 80). Dr. Lo testified that there is not always an objective finding as to the cause of syncope, but that plaintiff was not faking the symptoms since he was actually injured during some of the episodes (Ex. 5, pp 15, 73)

Syncope is a recognized physiological disorder or "condition" which affects the following major body systems – neurological, musculoskeletal, and special sense organs. Fainting is an impairment which affects a person's body systems because a person loses consciousness. It is analogous to a grand mal epileptic seizure – a person suffering from syncope or epilepsy loses consciousness and thereby loses control over his bodily functions, including his neurological, musculoskeletal, and special sense organs. Accordingly, plaintiff's repeated episodic loss of consciousness, constitutes a disorder or impairment under the ADA

Defendants also contend that "Dr. Lo has never observed plaintiff faint," but this is irrelevant. A physician need not witness a patient having cardiac failure, epilepsy, or syncope to determine that the impairment exists. In fact, the purpose of medical files, charts, and testing is to enable the physician to diagnose and treat an individual based on medical history, not on first party observations, which rarely occur. A diagnosis may occur notwithstanding the fact that no tests revealed the cause of plaintiff's impairment. The ADA does not require that plaintiff, or his physicians, understand the etiology of the impairment. Thus, in McCormak v. Long Island

8

Rail Road Company, 03-CV-6597, 2006 WL 490032 at *4 (fn. 2) (S.D.N.Y. Feb. 28, 2006), the court noted that "[w]hether the seizures are caused by the impairment of alcoholism or by some other factor is a medical question that need not be answered at the summary judgment phase."

Since syncope is a cognizable physical impairment, and plaintiff and his physician have testified that plaintiff suffers from syncope, it is impossible for defendants to prove, as a matter of law, that syncope is not an impairment, or that plaintiff does not suffer from syncope. Therefore, an issue of fact exists which must at trial before a factfinder.

B.   Syncope Substantially Limits Plaintiff's Major Life Activities

Defendants also claim that plaintiff's impairment does not rise to the level of a disability within the meaning of the ADA because it did not substantially limit a major life activity. Under the ADA, a major life activity means "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. 1630.2. Since fainting affects a person's consciousness it affects in untold ways major life activities. The implications of unconsciousness, syncope, affect a person's ability to walk, see, speak, care for oneself, and numerous other major life activities. There can be no serious dispute that numerous bodily functions are affected when a person loses consciousness.

Under the ADA

> substantially limits means, (i) unable to perform a major life
> activity that the average person in the general population can
> perform, or (ii) significantly restricted as to the condition, manner
> or duration under which an individual can perform a particular
> major life activity as compared to the condition, manner, or
> duration under which the average person in the general population
> can perform that same major life activity.

29 C.F.R. 1630(j)(i)-(ii).  Since consciousness is a major life activity, and the predicate for

numerous other major life activities (seeing, hearing, walking, caring for oneself, for instance), a

loss of consciousness substantially limits plaintiff's ability to perform many major life activities.

Defendants argue that "plaintiff is limited only in his ability to perform strenuous

physical activity, according to both his own testimony and the testimony of his physician."

Under the ADA

> [t]he following factors should be considered in determining
> whether an individual is substantially limited in a major life
> activity: (i) the nature and severity of the impairment, (ii) the
> duration or expected duration of the impairment, and (iii) the
> permanent or long-term impact, or the expected permanent or long-
> term impact of or resulting from the impairment.

29 C.F.R. 1630(j)(2).  In the present matter, even if the duration of each fainting episode is short,

the permanence of the condition is some form of chronic since it has existed since 1992 (Tx. 4,

pp. 91-109).  Further, plaintiff's syncope – which occurred on several occasions in the workplace – is a

severe impairment because plaintiff loses control of nearly every bodily function during these

episodes.  Consequently, plaintiff's established cause of fact – that his syncope substantially

limits his consciousness, which is an umbrella life activity that covers many major life

activities.  Summary dismissal of this claim, as a matter of law, is not appropriate.

Although repetitive and intense exercise under certain conditions has triggered plaintiff's

syncope, plaintiff does not contend that syncope prevents him from performing strenuous

activity.  The physical impairment of syncope limits plaintiff's major life activities related to

consciousness – seeing, hearing, walking, and caring for oneself.  Whether or not plaintiff can

_____

[7]  This is unlike Fleming v. Verizon New York, Inc., 03 CV 5639, 2006 WL 2709766 (S.D.N.Y.
Sep. 22, 2006), where the plaintiff suffered from only one fainting incident.

perform strenuous activity, and the type of activity that he can perform, is only relevant to whether plaintiff can perform the essential functions of the job (discussed infra). Plaintiff's ability to perform strenuous work activities does not answer the inquiry of whether syncope substantially limits the major life activities which require consciousness. The term "substantially limited" only applies to the major life activities which, in this case, are those activities governed by consciousness. "Strenuous activity" is not a major life activity defined by the ADA. 29 C.F.R. 1630.1. Nor is whether plaintiff can perform strenuous activity is related to the issue of fact at hand – whether syncope substantially limits any major life activities.


C.      Plaintiff's Medical Condition is a Disability

        Defendants argue that plaintiff's syncope has been eliminated through medication and therefore, in his corrected state, plaintiff is no longer disabled. However, defendants has already conceded otherwise. Anne Williams squarely testified that plaintiff is disabled. Specifically, she testified that

                Q: Initially, as part of your duties and responsibilities, don't you
                determine if a person has disability under the Americans with
                Disabilities Act?

                A: Sure. Based on the condition diagnosed by the doctor.

                Q: And did you conclude in Mr. Hines' case that he did have a
                medical condition under the ADA?

                A: Sure. This is the reason why we provided him with the
                functions of his choice.

(Ex. No. 136) Since facts adduced on a summary judgment motion cannot contradict deposition testimony, Reisner v. General Motors Corp., 671 F.2d 91, 92 (2d Cir. 1982); Schwimmer v. Sony

Corp. of America, 637 F.2d 41 (2d Cir. 1980), defendants cannot now contradict the testimony of its own witness by now claiming that plaintiff is not disabled under the ADA.

Defendants should also be equitably estopped from claiming that plaintiff's pursuit of medication and medical treatment (for an impairment that defendants claim does not exist) eliminates his disability. Equitable estoppel is "designed 'to ensure fairness in the relationship between parties.'" Bates v. Long Island Rail Road Company, 997 F.2d 1028, 1038 (2d Cir. 1993) quoting, Kosakow v. Ghen, 476 F.3d 130, 137 (D.C. Cir. 1940). In the present case, plaintiff's physician presented numerous documents indicating that plaintiff could perform the essential functions of the job, and defendants repeatedly refused to reinstate plaintiff to the position of Highway Repairer, claiming that plaintiff could not perform the essential functions of the job. Defendants may not now claim the opposite, that plaintiff's impairment "does not cause him any limitations." Defendants cannot blithely argue that plaintiff can perform the essential functions of Highway Repairer while defendants intentionally barred plaintiff from the same employment since January 2004, depriving him of his wages and health insurance. This Court should not countenance such an argument. Defendants are estopped, by their own actions, from claiming that plaintiff is not disabled, notwithstanding "the degree to which [ plaintiff's] seizures are controlled, if at all, remains a disputed issue of fact." McCormick v. The Long Island Rail Road Company, E.D.N.Y. 05912, 2006 WL 4900, *3 (S.D.N.Y. Feb. 28, 2006). This prevents summary judgment.


D      Plaintiff is Qualified to Perform the Duties of Highway Repairer

Defendants created a list of seven essential job functions for the position of Highway

Repairer on March 9, 2007 (Ex. 19, 20). These job functions were imprecise in that they did not state the amount of time an employee has to engage in these functions, the amount of weight involved, or the external conditions (Ex's 19, 20). Ultimately, plaintiff's physician indicated, in writing, that plaintiff can perform all these duties (Ex's 9, 10a, 19, 20, 21, 23), despite the vagueness of defendants' tasks and standards. However, defendants repeatedly rejected plaintiff's physician's representations that plaintiff could perform the essential functions of the job, in violation of the ADA.

The ADA contemplates an interactive process between the employer and the employee to determine limits of a reasonable accommodation. EEOC Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act, Number 915.002, October 17, 2002, Question 6 ("A request for reasonable accommodation is the first step in an informal, interactive process between the individual and the employer"). An employer should obtain and review the impairment and its limitations with the employee and obtain records from the employee's physician. Once aware. Importantly:

> The ADA does not prevent an employer from requiring an individual to go to an appropriate health professional of the employer's choice if the individual provides insufficient information from his/her treating physician (or other health care professional) to substantiate that s/he has an ADA disability and needs a reasonable accommodation ... Documentation is insufficient if it does not specify the existence of an ADA disability and explain the need for reasonable accommodation. Any medical examination conducted by the employer's health professional must be job-related and consistent with business necessity. This means that the examination must be limited to determining the existence of an ADA disability and the functional limitations that require reasonable accommodation.

Id. In the present case, there was no basis for defendants to conclude that plaintiff's medical

13

certifications were somehow "insufficient." If there were, defendants should have subjected plaintiff to a medical exam, which they did not do.

Defendants' tasks and standards (Ex's 9, 19, 20) confirm that the position of Highway Repairer does not require repetitive, strenuous, heavy labor. Task #1 involves vehicle operation, Task #2 involves equipment maintenance, Task #3 involves maintaining records, Task #7 involves taking proper safety precautions while performing assigned duties, and Tasks #4, #5, and #6 require some physical exertion, but not constant, strenuous, heavy physical labor (Ex. 19, 20). On March 31, 1997, plaintiff crossed out the light and incidental laboring related to street maintenance and winter melting, etc. (Ex. 19). In addition, next to the same wording of Task #6 "General Labor as directed by the commissioner" (which did not specify the type of duties, duration or conditions) plaintiff wrote, "To the best of my ability" (Ex. 19). However, plaintiff completed this review of defendants' vague standards before plaintiff was placed on a new medication to regulate his heartbeat. Later, he and his physician executed this form without any restrictions, after he had been on medication (Ex. 20).

On June 8, 1997, after plaintiff had been medicated with metoprolol, plaintiff's physician represented that plaintiff could perform "all seven job assignments" (Ex. 10b). Later, plaintiff corroborated this by letter dated June 25, 2007 (Ex. 11). Ann Williams simply did not "accept the accuracy" of the information from the doctor's office (Ex. 2, p. 80), believing instead that the doctor's signature may have been falsified (Ex. 2, p. 102). Next, plaintiff furnished a letter from Dr. Lo (Ex. 21) attesting to his own signature on the previous document (Ex. 20) in which Dr. Lo stated plaintiff could perform the seven essential functions. This was solely to appease the rarefied standards being imposed by Ann Williams. This, too, was rejected (Ex. 22). Thus

14

preventing plaintiff from returning to work. Even a subsequent letter from Dr. Lo stating that, "I have read the above job descriptions. In my medical opinion, the above is well enough to return to work. He was also cleared by his neurologist" (Ex 23) was rejected by Anne Williams (Ex 24). Consequently, an issue of fact arises concerning whether or not plaintiff was qualified to perform the duties of Highway Repairer. Plaintiff's argument is further buttressed by the fact that he has not suffered an attack of syncope since he has been medicated with this dosage of metoprolol. As the Second Circuit held in D'Amico v. City of New York, 132 F.3d 145, 151 (2d Cir. 1998), citation omitted, "where that issue is to be decided in the likelihood that an event will occur, the fact that it had occurred is perhaps the most probative evidence possible." Conversely, where the condition has not occurred once he is taking medication, that is the best evidence that it will not recur. Therefore, defendants had no basis to reject the certifications of plaintiff's physician. Nevertheless, defendants, who waived these medical representations from plaintiff, repeatedly rejected the unequivocal unambiguous medical certifications that plaintiff could return to work. Defendants never sought a medical examination of plaintiff, as contemplated by the ADA. Under these circumstances, defendants cannot prove, as a matter of law, that plaintiff is unable to perform the essential functions of the job, especially since "[t]he court must resolve all ambiguities and draw all inferences against the moving parties." Lacey v. Retirement Living Pub. Co., 949 F.2d 576, 580 (2d Cir. 1991).

Defendants appear to claim that the plaintiff's syncope would pose a "direct threat" to himself or others under the ADA. The term "direct threat" means a "significant risk to the health or safety of others that cannot be eliminated by reasonable accommodation." 42 U.S.C. § 12111(3). This defense "requires an "individualized assessment of the employee's present ability

15

to safely perform the essential functions of the job . . . based on a reasonable medical judgment that relies on the most current medical knowledge and/or on the best available objective evidence." 29 C.F.R. § 1630.2(r).

According to the Second Circuit, "[w]hen conducting such an 'individualized assessment,' the factors to be considered include '(1) [t]he duration of the risk, (2) [t]he nature and severity of the potential harm, (3) [t]he likelihood that the potential harm will occur, and (4) [t]he imminence of the potential harm.'" Sista v. CDC Ixis North America, Inc., 445 F.3d 161, 170 (2d Cir. 2006). Further, this defense is "an affirmative defense to be proven by the defendant." Id.; citing, Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 220 (2d Cir. 2001). Since defendants bear the burden of proving this "individualized assessment," it cannot be concluded, as a matter of law, that plaintiff cannot perform the essential functions of the job, due to a risk to the health and safety of himself and others, especially where plaintiff and his physician have represented that plaintiff could perform the essential functions of the job and defendants submitted no evidence to the contrary.

More specifically, "[a]n employer . . . is not permitted to deny an employment opportunity to an individual with a disability merely because of a slightly increased risk. The risk can only be considered when it poses a significant risk, i.e. high probability, of substantial harm; a speculative or remote risk is insufficient." Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 220 (2d Cir. 2001), quoting, Hamlin v. Charter Township of Flint, 165 F.3d 426, 432 (6th Cir. 1999), quoting, 29 C.F.R. § 1630.2(r). In addition, "'[t]he legislative history of the ADA also supports the premise that '[t]he plaintiff is not required to prove that he or she poses no risk.'" Id., citing, H.R.Rep. No. 101-485, pt. 3 at 46 (1990), reprinted in 1990 U.S.C.C.A.N.

115, ¶69.  Consequently, an issue of fact remains as to whether plaintiff, after being medicated and certified ready to return to work by his physician, posed a risk to himself or others which prevented him from performing the essential functions of Highway Repairer.

Defendants did not provide sufficient information for any physician to coherently assess this risk based on the job specifications.  Although Dr. Lo noted that plaintiff can return to work, he noted that the job duties were too vague to fully assess.  Dr. Lo testified that, in substance, he could not determine an exact amount of weight which plaintiff could safely lift because there are too many variables – the temperature at the time of the lifting, the number of hours engaged in lifting, the amount of weight involved, etc.  He estimated that those much and how to lift just depends upon the circumstances.  (Dr. Lo pp. 15-1.)  No physician can reasonably determine what an employee can or cannot perform with such abstract parameters.  Any person can be advised to lift time under the conditions of constant, strenuous activities, in extreme weather.  Given the vagueness of the defendant's job functions, plaintiff and his physicians repeated representations that plaintiff can perform the essential functions of the job, and the fact that defendants had no contrary evidence, and never subjected plaintiff to an examination by one of defendants' physicians, plaintiff establishes an issue of fact regarding whether he could return to work to perform the essential functions of the position of Highway Repairer.

F.    Plaintiff Can Perform the Essential Duties as Highway Repairer with Reasonable
      Workplace Accommodations

To the extent that plaintiff may need reasonable workplace accommodations, the record establishes that plaintiff can temporarily occupy a Highway Repairer Safety Position and/or asphalt, cementing joints, and hardware, if and when necessary.  According to Arna Williams:

> The safety position can either be one where someone stands at the
> back of a truck, the back of the beginning of the entrance or the
> exit of a site where they are performing work with a flag or they
> sometimes sit in a truck, they sit in a truck that blocks the entrance,
> and that's all you do.

(Ex. 2, p. 124.) During anticipated periods of extreme weather, where plaintiff would otherwise be required to transport heavy items, defendants could temporarily reassign plaintiff to the safety function. This position is an essential function of a Highway Repairer, especially since these duties must be performed by a Highway Repairer anyway, and plaintiff has previously performed this function. According to an Administrative Law Judge, plaintiff "worked for the prior eight months on limited duty" and "finally physical 'safety' work" (Ex. 3, p. 4). At worst, plaintiff is capable of performing the essential functions of the position of Highway Repairer with a temporary accommodation to safety functions of Highway Repairer. As set forth in *DeAmico v. City of New York*, 132 F.3d 145, 151 (2d Cir. 1998) (citation omitted):

> [I]t is enough for the plaintiff to suggest the existence of a
> plausible accommodation, the costs at which facially do not
> clearly exceed its benefits. Once the plaintiff has done this, [he]
> has made out a prima facie showing that a reasonable
> accommodation is available, and the risk of non-persuasion falls on
> the defendant.

In *DeAmico*, plaintiff alleged that no accommodation; but in the present case, plaintiff suggests a temporary accommodation to perform other Highway Repairer duties (Safety Functions and/or asphalt, cementing joints, and handwork) on the few occasions where plaintiff would be required to perform repetitive strenuous activities on days of extreme weather, if necessary. At all other times - and perhaps at all times, given his current medication - plaintiff is capable of performing the other essential functions of his job, notwithstanding defendants vague proffer of applicable job functions. Whether or not temporary safety functions or asphalt, cementing joints and

18

hardware functions of a Highway Repairer are a "reasonable accommodation" for a Highway Repairer, if not self-evident by defendants own admissions and accommodations, is a question of fact to be determined by a jury under the ADA. It is not a fact to be tried by a Court on summary judgment.[7]

_____

[7] Defendants have not argued, nor can they, that this type of accommodation, for the City of New York, would cause an undue hardship. 42 U.S.C. § 12112(b)(5)(A).

POINT III

EVEN IF PLAINTIFF IS NOT DISABLED, HE WAS
REGARDED AS DISABLED AND HAS A RECORD OF A
DISABILITY, WHICH MAKES HIM A "QUALIFIED
INDIVIDUAL WITH A DISABILITY" UNDER THE ADA

A.    Defendants Regarded Plaintiff as Disabled

Under 42 U.S.C. Section 12102(C), a plaintiff is a qualified individual with a disability if

he is "regarded" as disabled or has a record of a disability. According to the Second Circuit

> A plaintiff cannot state a claim under the "regarded" as prong of the
> ADA . . . simply by alleging that the employer believes some
> physical condition such as height, weight, or hair color, renders
> the plaintiff disabled. Rather, the plaintiff must allege that the
> employer believed, however erroneously, that the plaintiff suffered
> from an impairment that, if it truly existed, would be covered
> under the statute[] and that the employer discriminated against the
> plaintiff on that basis.

Heyman v. Queens Village Committee for Mental Health for Jamaica Community Adolescent

Program, Inc., 198 F.3d 68, 73 (2d Cir. 1999), quoting Francis v. City of Meriden, 129 F.3d 281,

285 (2d Cir. 1997); see also Sutton v. United Air Lines, Inc., 527 U.S. 471, 489 (1999). This

occurs when an employee believes "either that one has a substantially limited impairment that

one does not have or that one has a substantially limiting impairment when, in fact, the

impairment is not so limiting." Sutton v. United Air Lines, Inc., 527 U.S. 471, 489 (1999).

In Heyman, the Second Circuit remanded a case where a memorandum from the employer

Defendants in their Memorandum of Law in Support of their Summary Judgment Motion have
incorrectly made a statement that "Plaintiff does not complain that he was discriminated against because of
either having a record of an impairment or being regarded as having an impairment (Defendant's
Memorandum of Law, p. 6, fn. 2). Plaintiff does, in fact, rely on these definitions of disability as
referenced in the ADA and implicitly contained in the complaint, and the facts and record fully set forth
those issues. If deemed necessary by the Court, plaintiff can amend his complaint to explicitly state that
he was discriminated against because he is regarded as disabled and has a record of a disability.

noted the "level of time and commitment" required of plaintiff, who had presented evidence of a "sterling attendance record" who worked "longer hours than required." Id. The Court held that "a reasonable jury could conclude that the concern expressed by Johnson was engendered by a fear that Heyman's lymphoma would render him unable to complete his assigned tasks." Id.

In the present case, it is undisputed that defendants refused to reinstate plaintiff to the position of Highway Repairer because they believed that his seizures disqualifies him from performing the tasks of this position. Specifically, defendants reassigned plaintiff to asphalt, cementing joints, and handwork, functions on October 18, 2005 (Ex. 4), to a Safety Position on May 2006 (Ex. 4, pp. 71, 74, 87-88), and prevented plaintiff from working at all after January 2007. When defendants created a Tasks and Standards in March 2007, plaintiff and his physician indicated that plaintiff could perform these duties as June 2007 (Ex. 109, 11, 10), but defendants still refused to reinstate plaintiff. Consequently, defendants perceived — on numerous occasions — that plaintiff's impairment substantially limited his major life activities relating to consciousness, performing manual tasks, and as working in a broad range of jobs. Similar to Heyman, defendants' actions demonstrate that they regard plaintiff as "unable to complete his assigned tasks," even if he were not disabled.

The instant matter is similar to Rios v. Syscos Food Services of Albany, LLC, 888 F. Supp. 2d 228, 239 (N.D.N.Y. 1986) where the plaintiff had epilepsy, and the defendants "regarded plaintiff as unable to work in any job requiring the operation of trucks, forklifts, or any other company vehicle." The Court held that "positions requiring the operation of all vehicles and heavy equipment constitutes a class of jobs. Thus, plaintiff has shown that [defendant] regarded his epilepsy as a substantial limitation on his ability to work." Id. Similarly, defendants

facts conclusions that plaintiff was unable to perform the position of Highway Repairer, a Civil Service title that encompasses a broad range of jobs, demonstrates an issue of fact that defendants perceived plaintiff to be disabled.

B.     Plaintiff is Disabled Because he has a Record of a Disability

"Even where an individual does not have a disability at the time of his employer's alleged discriminatory action, he may be considered disabled under the ADA if he "has a record of a disability." McCormack v. The Long Island Rail Road Company (LV-CV-0334, 1999 WL 499893" at *2 (S.D.N.Y. Feb. 28, 1999), citing, 42 U.S.C. § 12102 (d)(A); School Board of Nassau County v. Arline, 480 U.S. 273, 281 (1987)). Congress enacted this provision "to protect individuals from discrimination due to perceived history." Id., citing, 29 C.F.R. Pt. 1630, App. §-1630.2(k). In the present case, defendants were aware of plaintiff's record of a disability since 1998 or 1999 (Ex. 2, p. 74). Specifically, plaintiff had a record of syncope (marks) on January 5, 2001 (Ex. 15, pf.8g.) and (dir Amera 3, 2001 (Ex. 5 pf.8g) and to it, January 29, 1993 (Ex. 15 q.6) our and (d1l. July 8, 2001 (Ex. 16 pf.8g.) and (d1l), August 11, 2004 (Ex. 17 pf.8g.) and (dir. and on January 26, 1996 (Ex. 138 pf.8g.) and (d1l).  Notwithstanding the repeated representations from plaintiff and his physician that plaintiff could return to work from a medication that controlled his heart rate, defendants rejected plaintiff's medical certifications without any basis.  The person who rejected plaintiff's medical evidence, was aware of plaintiff's record of a disability since 1998 or 1999 and testified that she rejected the veracity of the medical documentation.  Consequently, another issue of fact arises - whether defendants refused plaintiff's return to work based on the record of plaintiff's disability.  This also prevents

22

summary judgment.

## CONCLUSION

For the foregoing reasons, plaintiff requests that this Court deny defendant's motion for summary judgment in its entirety and grant such other and further relief as the Court deems just and equitable.

Dated:    December 11, 2007
             Mineola, NY

Respectfully submitted,

KORN & SPIRN, Esqs.

By: _____
        Arthur J. Spirn, Esq (AJS 6521)
        Attorneys for Plaintiff, James Hunt
        80 Clinton Street - Ste. 504
        Hempstead, NY 11550
        (516) 537-5252

## CERTIFICATE OF SERVICE

I certify that on December 11, 2007, I served the enclosed:

Brief on Behalf of Plaintiff James Hines in Opposition to Defendants' Partial Motion for Summary Judgment

by ECF and by regular mail to

Phyllis Calistro, Esq.
Assistant Corporation Counsel
NYC Law Department
100 Church Street
New York, NY 10007-2601

Arthur Z. Schwartz (AS-2683)